La Valley, Plaintiff in error, vs. The State, Defendant in error.

*September 26—October 20, 1925.*

Criminal law: *Sufficiency of evidence: Verdict of jury: Weight on appeal: Witness: Correction of testimony on former trial: Defense of alibi: Testimony as to defendant's whereabouts before crime: As to intoxication: Misconduct of party with jury: Sheriff as "party" in criminal case: Juror riding in sheriff's automobile: Reversal of conviction.*

1. The evidence in a criminal case may present a question for the jury under established rules, although if the members of the supreme court were sitting as a jury a verdict of guilty would not be unanimously reached upon the evidence.  p. 69.

2. A witness may and should correct his testimony given on a former trial when convinced that he was in error; and the weight of his evidence under such circumstances is for the jury.  p. 70.

3. Evidence as to defendant's movements and whereabouts for a day or two before the commission of the alleged rape is *held* properly admitted, especially in view of the defense of *alibi.* p. 70.

4. In a trial for rape, alleged to have been committed between 6 and 9 o'clock p. m., testimony that defendant was intoxicated at 2 a. m. of the same day was improperly admitted; but in this case its prejudicial effect is not established.  p. 70.

5. The conduct of a juror and the sheriff in riding together in the latter's automobile to a dance after adjournment of court and before the prosecuting attorney had closed his argument was improper, even though full credit be given to their affidavits that the case was not mentioned and no effort made to improperly influence the juror's conduct.  p. 72.

6. The conduct of a state officer, such as a sheriff who was active in procuring evidence of defendant's guilt, must be regarded as the conduct of the opposite party, within the rule requiring that a verdict be set aside, whether right or not, where a juror has been treated, fed, or entertained by the successful party.  p. 76.

7. A verdict will be set aside where a juror received courtesies and favors from the prevailing party, including the sheriff as an officer of the state, without considering whether such conduct actually influenced the verdict.  p. 80.

8. Sec. 3072*m*, Stats., providing that no new trial shall be granted by this court "on the ground of misdirection of the jury, or the improper admission of evidence, or for error as to any matter of pleading or procedure," unless the error complained of has affected the substantial rights of the party seeking a reversal, does not require that a conviction be sustained unless it be shown that the misconduct of a juror and the sheriff affected substantial rights. p. 81.

ERROR to review a judgment of the circuit court for Waupaca county: BYRON B. PARK, Circuit Judge. *Reversed.*

*L. D. Smith* of Waupaca, for the plaintiff in error.

For the defendant in error there was a brief by the *Attorney General, J. E. Messerschmidt,* assistant attorney general, *B. R. Goggins,* special assistant to the district attorney of Waupaca county, and *Otto L. Olen,* district attorney, and oral argument by *Mr. Goggins* and *Mr. Messerschmidt.*

OWEN, J. Plaintiff in error (hereinafter called the defendant) was convicted of the crime of rape upon a female twelve years of age, who will hereinafter be referred to as the prosecuting witness. The principal contention urged for a reversal of the judgment is that the verdict of guilty is not supported by the evidence. It seems that no good purpose will be subserved by setting forth the evidence in detail. It has received the most careful attention of this court, and the conclusion is reached, perhaps rather reluctantly, that the evidence presents a jury question, under the rules established by this court in such cases. It may be said that if the members of this court were sitting as a jury, a verdict of guilty would not be unanimously reached upon the evidence.

The defendant attempted to establish an *alibi,* to support which he produced witnesses who testified to his presence at times and places wholly inconsistent with his guilt. There were two trials of this case. Upon the second trial, re-

sulting in the judgment here under review, one witness, who testified on the first trial that he saw the prosecuting witness at a time and place inconsistent with defendant's guilt, testified that he did not see her at such time and place, admitted that he so testified on the first trial, but had come to the conclusion that he was in error. He did not advise the defendant that he so concluded, or that he proposed to change his testimony, but, on the contrary, advised the defendant and his attorney that his testimony would be the same as that given on the first trial, down to the evening of the day before he was placed upon the stand. His change of testimony came as a complete surprise to the defendant, and it is apparent that he testified falsely either upon the first or upon the second trial. This is another circumstance that is not reassuring upon the question of defendant's guilt. However, it is not only the right but the duty of a witness to correct his testimony when convinced that he was in error, and the weight to be accorded his evidence under such circumstances is for the jury, under well established principles. This is also true of the evidence relating to the *alibi;* and while a consideration of the evidence may not be convincing to the minds of all the members of this court concerning the defendant's guilt, it must be held that it was within the province of the jury to render a verdict of guilty, and the judgment cannot be disturbed on the ground that it is unsupported by the evidence in the case.

Error is also assigned because the State was permitted to prove that the defendant was intoxicated at 2 o'clock in the morning of the day upon which the alleged crime was committed, the time of the commission of the crime being between 6 and 9 o'clock on the evening of that day. The State introduced evidence showing the movements and whereabouts of the defendant for a day or two before the commission of the crime. This was proper, especially in view of defendant's *alibi* defense. As a part of this testimony, one witness testified that the defendant came to his house at 2 o'clock in the morning in an intoxicated condition. We

think it was error to permit the witness to testify to his intoxicated condition at 2 o'clock in the morning. That could have no possible relation to the commission of the crime between 6 and 9 o'clock in the evening. But we are not impressed with the view that the admission of such evidence constituted prejudicial error, under all the circumstances of this case. Besides, it is doubtful whether the proper objection to the introduction of such testimony was made to preserve the question for review.

Certain alleged misconduct of the sheriff and one of the jurors is also relied upon as a ground for reversal. It appears that the court adjourned in the evening after the attorney for the defendant had concluded his argument to the jury but before the prosecuting attorney had closed his argument. There was a dance that night some ten or twelve miles from Waupaca. A juror with two of his friends were seeking means to go to the dance. His friends told the juror that they were going to ride with the 'sheriff and thought there was room for him also. He requested his friends to ask the sheriff if he might ride to the dance in the sheriff's automobile. They said they would do so, but, upon meeting the juror a little later, said they had concluded to go in another automobile, and they were sure he could ride with the sheriff. He saw the sheriff and asked if he could ride to the dance with him, and was advised that he could. He did ride to the dance in the sheriff's automobile. He sat in the back seat, the sheriff and his wife sitting in the front seat. His two friends immediately followed behind the sheriff's automobile in their car. The sheriff was going to this dance for the purpose of preserving order, and, upon arriving thereat, the sheriff went about his official duties. The juror danced once with the sheriff's wife, and, rather early in the evening, returned to Waupaca with his two friends in their automobile.

The matter was brought to the attention of the trial court by a motion of the defendant to set aside the verdict because of the misconduct of the sheriff and of this juror. Af-

fidavits were presented to the trial court setting forth fully the circumstances, declaring that nothing was said about the case, and that no attempt was made in any way, shape, or manner to influence the juror's judgment, resulting in a denial of the motion by the lower court.

The defendant's attorney vigorously urges this misconduct as a ground for setting aside the verdict. We regard the question thus raised as a serious one, and have given it much consideration.

That the conduct of both the juror and the sheriff was indiscreet and improper is plain, and this even though full credit be given to the affidavits of the sheriff and the juror to the effect that the case was not mentioned between them, and that there was no effort made at any time to improperly influence the conduct of the juror. This will more clearly appear as we proceed.

From the very origin of the institution of the jury courts have most jealously guarded their deliberations from influences extraneous the evidence, upon which only verdicts should be based. In an early day the jury was kept together and denied both food and drink from the time they were impaneled until the verdict was rendered. As late as 1796 Lord KENYON established precedent by adjourning court until the next morning, the court having sat thirteen hours, observing that necessity justified what it compelled, and that though it was left to modern times to bring forth cases of such extraordinary length, no rule could compel them to continue sitting longer than their natural powers would endure. This practice was indulged to protect the jury from any and every kind of outside influence, and was departed from only as necessity compelled. Of course such practice could not obtain in this day, but the practice is still preserved, probably in every state of this Union, of keeping the jury together, and isolated from every outside influence, in capital cases. Speaking of this usage of the common law, the Nevada court expresses the opinion "that whenever that

is properly adjudged lawful which, according to the rigor of the ancient law, was unlawful, there have concurred a real or supposed necessity, a consequent power in the court to license the act, and the express or implied consent of the court to the doing of it." *Sacramento & M. M. Co. v. Showers,* 6 Nev. 291, 299.·

Questions often arise as to whether the separation of a jury in capital cases vitiates the verdict, and it is generally held that, *prima facie,* such an irregularity calls for a new trial, and the onus is on the prosecution to show affirmatively that the jury had not been tampered with. Where that is made to plainly appear the verdict is not set aside. *Butler v. State,* 72 Ala. 179; *Wood v. State,* 34 Ark. 341; *Comm. v. Wormley,* 8 Gratt. (Va.) 712; *Boles v. State,* 13 Sm. & M. 398; *Manna v. State,* 179 Wis. 384, 192 N. W. 160; 2 Bishop, New Crim. Proc. (2d ed.) § 998*a,* and cases there cited.

It is a general principle, also, that where a juror has been treated, fed, or entertained by the successful party or his counsel the verdict will be set aside, without reference to the question whether or not the verdict was right. This for the reason that it is deemed by most courts as an indispensable rule of public policy to preserve the purity of the verdict. Thus in *Walker v. Hunter,* 17 Ga. 364, 414, a new trial was granted for the reason that, while the cause was pending, one of the counsel for the prevailing party entertained two jurors at his house, the court saying: "This is undoubtedly a good ground. It is hardly in the power of affidavits wholly to free this affair from suspicion. It is not in the power of affidavits to show that the two jurors were not consciously or unconsciously affected by it."

In *Drake v. Newton,* 23 N. J. L. 111, the verdict of the jury was set aside because the prevailing party entertained the jurors with eating and drinking during the progress of the trial, the court saying: "It is the duty of the court to hold a strict rein over the conduct of parties, and to guard

the purity of the trial by jury with the utmost circumspection. A party must not be permitted, directly or indirectly, to prepossess the minds of jurors by unusual civilities, or in any other mode, during the progress of the trial."

In *Mynatt & Howell v. Hubbs*, 6 Heisk. (53 Tenn.) 320, a new trial was granted because the prevailing party upon two occasions took two of the jurors into a saloon and treated them.

In *Springer v. State*, 34 Ga. 379, a verdict was set aside because, while the trial was in progress, one of the counsel engaged in the prosecution entertained and protected for the night, free of charge, the horses of some of the jurors.

In *Lyons v. Lawrence*, 12 Bradw. (Ill. App.) 531, it was held that where a successful party produced in court and offered to the jury refreshments, this alone would justify a court in setting aside the verdict.

In *McCartney v. Saul*, 180 Mich. 502, 147 N. W. 566, a verdict was set aside because a juror was entertained at the home of the attorney for the prevailing party during the course of the trial; and in *Ensign v. Harney*, 15 Neb. 330, 18 N. W. 73, the supreme court of Nebraska set aside a verdict because, during the adjournment of a trial from Saturday to Monday, two of the jurors in the case requested as a favor and obtained from the attorney of the prevailing party his horse and buggy to carry them home, and return on the following Monday.

The cases above cited are civil cases, and the misconduct complained of is that of a party or his attorney. In the instant case the State is the prevailing party, and the question arises whether the misconduct of the sheriff can be regarded as the misconduct of a party within the principle above stated and illustrated. The State is necessarily represented upon the trial of such cases by its officers. Perhaps the prosecuting attorney must be considered as the most immediate representative of the State. But the sheriff is charged by statute with the duty of enforcing the law

La Valley v. State, 188 Wis. 68.

throughout his county, and the record in this case shows that from the time of the commission of the alleged offense down to the close of the second trial the sheriff's office was active in the matter of procuring evidence to establish defendant's guilt,—an activity which was indulged by the present sheriff. We desire to make it plain that no criticism of the sheriff's conduct in this respect is intended; rather, it is commendable. It is only instanced to show his relations to the case and to test the question whether or not he may be said to be in the position of a party so as to bring his conduct within the principle we are considering. We have found no case touching upon the conduct of the sheriff in this respect.

In *Odle v. State,* 65 Tenn. 159, the principle is applied in a criminal case where the prosecutor boarded at the same house with the jury during a trial, there being only two rooms in the house.

In *Hutchins v. State,* 140 Ind. 78, 39 N. E. 243, the verdict was set aside because the deputy prosecuting attorney, while the jury was on its way to the jury room after having been instructed, spoke to a juror and volunteered to take a message to the latter's family. The court said:

"Kindness is ordinarily a virtue. But this was neither the time nor the place for manifestations of kindness and good will by the prosecuting attorney or his deputy, to one of the jurors who were about to decide the fate of a man whom the state had been during all the trial trying to send to state's prison. Kindness and sympathy for the juror and his absent family at that hour might well touch the heart of the juror with sentiments of gratitude towards the lawyer, who was also apparently an intimate friend, for the juror asked him to put up at his house for the night. Without intending any wrong, the mind of the juror might well be turned in the direction of his friend's known wishes; and if his judgment should be poised between the guilt and innocence of the prisoner, might not his heart turn the scale? Granting that no wrong was intended by either prosecutor or juror, yet the offense committed by both against a fair

and impartial trial of the man accused of crime was most reprehensible."

In *McElrath v. State*, 32 Tenn. 378, it was held that a new trial will be awarded a prisoner convicted of manslaughter if it appear that during the progress of the trial the prosecutor spent a night in the room with the jury, who had been committed by the court to the care of a constable; and in such case the new trial will be awarded though the prosecutor be the sheriff of the county, and all exceptions to the competency of the panel of jurors summoned by him be waived by the prisoner; and though the prosecutor state in an affidavit that he "made use of no means of any sort to influence the jury." In such case it is not required of the prisoner to show that in fact his rights were prejudiced by the unauthorized interference of the prosecutor; it is sufficient that, from the admitted and unexplained facts of the case, they might have been prejudiced.

We are of the opinion that in criminal trials the officers of the state who are actively engaged in the prosecution in furtherance of their official duties, and who by their activity and attitude indicate a partisan interest in the outcome of the case, must be held to represent the State in that trial, and that their conduct, so far as it relates to the jury, must be regarded as the conduct of the opposite party, within the meaning of the rule we are considering.

The general effect of misconduct of or with the jury was pointed out in *State v. Hartmann*, 46 Wis. 248, 50 N. W. 193, in the following words: "If the court can see that the misconduct had, *or might have had,* an effect unfavorable to the party moving for a new trial, the verdict should be set aside." And in *Jackson v. Smith*, 21 Wis. 26, the same rule was stated, though in negative language, in the following words: "The weight of authority now is to the effect that in civil cases, if such improper conduct does not appear to have been occasioned by the prevailing party or any one in his behalf, and the court cannot see that it had or might

have an effect unfavorable to the party moving for a new trial, the verdict ought not to be set aside." It will be noted that this rule, affirmatively stated, is the same as the one laid down in *State v. Hartmann, supra.*

In *State v. Dolling,* 37 Wis. 396, Mr. Chief Justice RYAN was considering the effect on the verdict of the separation of the jury during the trial. The following language is taken from the opinion in that case:

"And convictions in what are called capital cases cannot be sustained when the jury is permitted to separate during the trial, 'unless it appears that the separation of the jurors was not followed by improper conduct on their part, nor by any circumstances calculated to exert an improper influence on the verdict.'

"We must confess that the exception appears to us more apparent than real. It is generally difficult to prove a negative. In this instance there is peculiar difficulty in disproving misconduct of jurors; broader difficulty still in disproving any circumstances calculated to exert improper influence on their verdict.

"Conceding the competency of the affidavits of the jurors themselves, how are jurors to make it appear that they were guilty of no misconduct? If they swear generally that they were not, they swear to a conclusion only, depending on their sense of what is improper; asking the court to be satisfied because they are satisfied. Jurors are rarely, perhaps, wilfully guilty of improper conduct to disturb their verdict. A well-meaning juror who is unconsciously so guilty will honestly deny it. An evil-minded juror consciously so guilty will be very apt to deny it. So that a juror's denial of the conclusion can weigh little. And the forms of improper conduct are so various that it would be very difficult to deny them to the satisfaction of a court.

"Circumstances calculated to exert improper influence on a verdict are so various and indefinite that it is hardly exaggeration to call them infinite. They may reach jurors consciously or unconsciously, directly or indirectly, in vast variety of ways, through their better or their worse qualities, in open court, in the closed jury room, or at large. How is a negative of such, during the dispersion of a jury,

to appear to the satisfaction of a court? We do not say that it cannot, but we confess that we do not see how.

"In the present case the learned judge of the circuit court took every precaution that could be taken on the separation of the jury; but the separation, under the rule, was voluntary provocation of the necessity of almost impossible proof to uphold a verdict of guilty. And we think that, in such cases, the only safe course is to refuse to let the jury separate."

The same difficulty in proving that improper conduct had no influence upon the verdict of the jury is also emphasized in *Wood v. State,* 34 Ark. 341, also in *People v. Turner,* 39 Cal. 370, where a juror attended a public meeting where the charge against the defendant was the subject of public discussion, during which the defendant was denounced in most bitter terms. It was there held that the verdict in which this juror participated could not stand.

In *Downer v. State,* 10 Ga. App. 827, 74 S. E. 301, it appeared that a witness who testified in the case denounced the defendant as a liar in the presence of a juror. The juror made affidavit that the conversation did not influence him in making his verdict. The court said:

"We think, however, that it was impossible for the juror to know whether he was influenced by this statement or not. The only effect it could have had upon him was detrimental to the accused. . . . Where a juror, charged with the duty of finding a verdict solely according to the evidence, hears a conversation in which the statement by the accused to the jury is characterized as a falsehood, it cannot be said that such characterization could not have tended to influence the juror to the injury of the accused. Presumptively it did so, and this presumption is too reasonable to be fully rebutted by a mere statement by the juror that it did not so influence him."

In *Knight v. Freeport,* 13 Mass. 218, a new trial was granted because the plaintiff's son-in-law said to one of the jurors that the cause was of great consequence to him; that he should have to pay the costs if the cause should go

against the plaintiff; and that the defense of the action was a spiteful thing on the part of the defendants, the court saying:

"Too much care and precaution cannot be used to preserve the purity of jury trials. The attempt to influence the juror in this case was grossly improper, and ought to be discountenanced. It is not necessary to show that the mind of the juror, thus tampered with, was influenced by this attempt. Perhaps it is not in his power to say whether he was influenced or not. If he was, there is sufficient cause to set aside the verdict; and if he was not, and the party who has gained the verdict has a good cause, he will still be entitled to a verdict upon another trial. We cannot be too strict in guarding trials by jury from improper influence. This strictness is necessary to give due confidence to parties in the results of their causes; and every one ought to know that for any, even the least, intermeddling with jurors a verdict will always be set aside."

We have thus reviewed the authorities somewhat at length because we feel that the situation here presented is a rather delicate one, and that it should be considered with fundamental principles clearly in mind. The writer, especially, has a feeling that courts are unconsciously drifting to the notion that misconduct of or towards the jury is cured by the simple filing of an affidavit on the part of the culpable parties that no improper influence was in fact exerted. *Dolphin v. Peacock M. Co.* 155 Wis. 439, 451, 144 N. W. 1112; *Manna v. State,* 179 Wis. 384, 404, 192 N. W. 160. Affidavits of this nature may always be expected from the bribe giver and the bribe taker. If a corrupt transaction actually took place, it may be expected that both parties thereto will deny it. Likewise if the misconduct was short of corruption, but might have had its influence upon the jury, the culpable parties may be expected to mitigate the extent of their culpability by denying that their conduct was intended to or did in any manner influence the verdict. As pointed out in many cases, influence is often subtle and un-

conscious, and it even may be that the juror is unable to say whether he was in truth influenced by the misconduct. This is the underlying reason for the rule which calls for the setting aside of verdicts where a juror is the recipient of courtesies and favors, such as food and drink, at the hands of the prevailing party. Few jurors would acknowledge that refreshments or entertainment extended by either party to the case, in any shape or manner influenced their verdicts. But because it is known that the extension of such favors arouses either a conscious or an unconscious gratitude on the part of normal persons, courts will not even inquire as to whether such conduct actually influenced the verdict. Public policy requires that verdicts shall not be the subject of suspicions which such conduct arouses. Hospitality and entertainment furnish a natural and easy approach to personal and official favor. This is well understood by the skilled lobbyist, who makes his first advances in this manner. Hospitality and entertainment extended to those from whom one seeks official favor arouses suspicion in the public mind, whether justified or not. And so it is with jury trials. In order that the institution be preserved and its usefulness continued, its deliberations and pronouncements must be kept pure, and untainted not only from all improper influences but from the appearance thereof. It is often said that the jury trial is one of the bulwarks of our liberty. But it will remain so only so long as public confidence in the institution prevails.

No person on trial for his liberty could look with composure upon the conduct of this sheriff and this juror. The natural effect of such conduct is to excite suspicion and to arouse the gravest apprehensions on the part of one so on trial, and certainly does not inspire confidence in the administration of justice. The courtesy extended by the sheriff to the juror is not different in character from that which has universally been held to vitiate verdicts of juries. The influences which may be exerted on such occasions are too

infinite and varied to be the subject of disproof, and the only safe rule to follow in all such cases is to set the verdict aside. It is not only a most wholesome but a necessary policy to promote confidence in the administration of justice to require litigants as well as their attorneys to abstain from all social relations and intercourse with jurors during the progress of a trial under the penalty of vitiating verdicts which they may obtain. This principle is plainly applicable to this situation, for which reason a new trial must be granted.

It is intimated that sec. 3072m, Stats., should be invoked to save the situation. That section provides, in brief, that no new trial shall be granted by the supreme court "on the ground of misdirection of the jury, or the improper admission of evidence, or for error as to any matter of pleading or procedure," unless it shall appear that the error complained of has affected the substantial rights of a party seeking reversal. It will be noticed that the statute does not in express terms cover misconduct of the jury, and, at any rate, we should be very reluctant to find that such misconduct did not affect substantial rights.

*By the Court.*—Judgment reversed, and cause remanded for a new trial. The warden of the state prison will deliver plaintiff in error, *Arthur C. La Valley,* to the sheriff of Waupaca county, who is directed to keep the said *La Valley* in his custody until discharged therefrom by due process of law.