SURMA and another, Plaintiffs in error, vs. THE STATE, Defendant in error.

*December 6, 1951—January 8, 1952.*

*Allan Cain* of Kaukauna, for the plaintiffs in error.

For the defendant in error there was a brief by the *Attorney General, William A. Platz,* assistant attorney general, and *O. B. Strossenreuther,* district attorney of Shawano county, and oral argument by *Mr. Platz.*

CURRIE, J.  It is the contention of the defendants that they are entitled to a new trial because the bailiff placed in charge of the jury during its deliberations was a deputy sheriff who had been one of the arresting officers and one of the officers who had obtained an alleged confession from the defendants, and had also been one of the witnesses who testified in behalf of the state at the trial.

During the time that the case was intrusted to the jury, the members of the jury were taken to supper in a public eating place.  The bailiff during this meal was seated at the table at which the male jurors ate while the bailiff's wife, who was in charge of the lady jurors, was seated at the table at which the lady jurors ate.  There is nothing in the record to indicate that either the bailiff or his wife said anything to the jurors during the meal, or at any other time prior to the return of the verdict, concerning the case.  Counsel who appeared for the defendants at the trial was not a resident of Shawano county, and at the time that the trial court had the clerk administer the oath to the bailiff who was to have the custody of the jury defendants' counsel did not recognize the bailiff as having been one of the persons who had testified in behalf of the prosecution.  Consequently, no objection was raised until after the jury had returned their verdict.

In the case of *La Valley v. State* (1925), 188 Wis. 68, 76, 80, 205 N. W. 412, which involved a criminal prosecution

for rape, the trial was adjourned in the evening after counsel for the defense had concluded his argument to the jury, and later in the evening one of the jurors drove to a dance some ten or twelve miles from the courthouse in the automobile of the sheriff, the juror riding in the rear seat and the sheriff in the front seat. At the dance the juror danced once with the sheriff's wife and rather early in the evening returned to the county seat with two friends in another automobile. Nothing was said between the sheriff and the juror concerning the pending case on the trip to the dance, or while at the dance, and apparently the sheriff had not been a witness at the trial.

Mr. Justice Owen, in his opinion in *La Valley v. State, supra,* stated:

"We are of the opinion that in criminal trials the officers of the state who are actively engaged in the prosecution in furtherance of their official duties, and who by their activity and attitude indicate a partisan interest in the outcome of the case, must be held to represent the state in that trial, and that their conduct, so far as it relates to the jury, must be regarded as the conduct of the opposite party, within the meaning of the rule we are considering. . . .

"And so it is with jury trials. In order that the institution be preserved and its usefulness continued, *its deliberations and pronouncements must be kept pure, and untainted not only from all improper influences but from the appearance thereof.* It is often said that the jury trial is one of the bulwarks of our liberty. But it will remain so only so long as public confidence in the institution prevails.

"No person on trial for his liberty could look with composure upon the conduct of this sheriff and this juror. *The natural effect of such conduct is to excite suspicion and to arouse the gravest apprehensions on the part of one so on trial, and certainly does not inspire confidence in the administration of justice.* The courtesy extended by the sheriff to the juror is not different in character from that which has universally been held to vitiate verdicts of juries. The influences which may be exerted on such occasions are too

infinite and varied to be the subject of disproof, and the only safe rule to follow in all such cases is to set the verdict aside. *It is not only a most wholesome but a necessary policy to promote confidence in the administration of justice to require litigants as well as their attorneys to abstain from all social relations and intercourse with jurors during the progress of a trial under the penalty of vitiating verdicts which they may obtain.* This principle is plainly applicable to this situation, for which reason a new trial must be granted." (Emphasis ours.)

The decision in *La Valley v. State, supra,* rules the instant case. It clearly would have been highly improper if the district attorney prosecuting the case would have had such social contact with the jurors as to have eaten a meal with them during the pending of the trial. The bailiff in this instance, as one of the arresting officers and witnesses for the state, is almost as closely identified with the prosecution in the eyes of the general public, and of the defendants, as was the district attorney. This would seem to be even a stronger case for granting a trial than in the *La Valley Case* because here the bailiff had been a witness for the state at the trial as well as a deputy sheriff and arresting officer.

The state urges that a new trial should not be granted for alleged misconduct affecting the deliberations of a jury without some showing that the defendants were prejudiced thereby. With this we cannot agree because as this court said in *La Valley v. State, supra,* the deliberations of a jury *"must be kept pure, and untainted not only from all improper influences but from the appearance thereof"* if public confidence in the administration of justice in our courts is to be maintained.

*By the Court.*—Judgment reversed, and cause remanded for a new trial.