HANCOCK, Plaintiff in error, vs. HALLMANN, Sheriff, Defendant in error.

*September 16—October 11, 1938.*

For the plaintiff in error there was a brief by *Rogers & Owens* of Portage, and oral argument by *Harlan B. Rogers*.

For the defendant in error there was a brief by the *Attorney General, J. E. Messerschmidt,* assistant attorney general, and *Burton E. Hoffmann,* district attorney of Marquette county, and oral argument by *Mr. Hoffmann* and *Mr. Messerschmidt.*

WICKHEM, J.   Defendant was charged by the complaint of Emil Bornick with having ravished the daughter of Bornick, a female over sixteen years of age, by force and against her will.   On June 15, 1938, a preliminary examination was held before the county judge of Marquette county. Upon prosecutrix being sworn, counsel for defendant objected to her competency upon the grounds that she was of such limited intelligence and suffering from such insane delusions and hallucinations as to be incompetent as a witness.   The objection was overruled, the court stating that it would be in better position to determine that question after the hearing.   The court was then requested by defendant to conduct an examination to ascertain the competency of the witness and acceded to the request to the extent of asking

about half a dozen questions relative to the witness' name, age, and residence. The examination of the witness upon the facts of the complaint then proceeded. At this stage, counsel for defendant requested permission to conduct an examination into her competency. The court denied this request, stating that if there was sufficient testimony to bind defendant over, the latter could have such an examination before trial in circuit court. Defendant then entered a general objection to any evidence produced by the prosecutrix at the hearing. The hearing then proceeded, and disregarding for the moment all questions as to the witness' competency and the manner in which her story was elicited, it may be stated that her testimony was that she was sent down to the mailbox to get the mail; that defendant was a stove salesman who had theretofore attempted to sell a stove at the farm; that he drove along the road in a car resembling that of the mailman, and she stopped his automobile, got into the car at his invitation, and had intercourse with him; that thereafter the mailman came and she got out of defendant's car and got the mail, and then got back into the car and again had intercourse with defendant. Her testimony is that neither the mail nor her clothes were torn, dirty, or wet, and that she did not bleed. She claims to have disclosed the facts of the transaction to her mother after she had been questioned as to the reason for her being so long at the mailbox. Her testimony is corroborated so far as going to the mailbox and getting into defendant's car is concerned. A physician testified to the fact that her hymen was presently ruptured, but that the rupture was not a recent one, and that if it had been recent, it would have been very obvious since he made his examination within a few hours after the alleged attack. He did state, however, that there could have been some degree of penetration of the prosecutrix.

It is clear that without the testimony of prosecutrix, there was not sufficient evidence upon which to hold defendant for

trial. Prosecutrix's evidence, if competent, does not disclose a rape by force, but it is conceded that it would be proper to bind defendant over if the preliminary examination disclosed any sexual offense. In view of the fact that the testimony of prosecutrix is essential to the showing of any crime upon the preliminary examination, it becomes important to consider defendant's objection that the examination of the witness conclusively shows her lack of capacity to recollect and narrate the facts of this transaction, as well as her failure to understand and appreciate her obligations as a witness. This requires a review of the evidence.

Prosecutrix testified that she was four years of age, when in fact she was twenty-four; that she could write but not read; that she went to "our church" but did not know its name; that it was right to tell a lie but not wrong to tell the truth. She stated that she knew what an oath was, but when asked to tell what it was gave no answer. She had never heard of the Bible. When asked whether her minister had told her the difference between right and wrong she said yes, and when asked what he taught her, she recited the names of some German songs. She told her story of the offense mostly by yes and no answers to leading questions. She was asked if anything happened in the car, and she gave no answer. She was asked whether she was in the defendant's car, and answered yes. She was asked who was there with her and answered, "Nobody." The question was repeated as to what happened in the car and she made no answer. She was asked where she went in defendant's car, and she answered, "Until noon." Again asked what she did in the car, she said nothing. Asked what defendant did to her, if anything, she did not answer. Again asked whether the defendant did anything to her in the car, she said, "Yes." To the question, "What did he do?" some answer in German was made which the interpreter could not understand. She was then asked if the man touched her, took her clothes off, took her bloomers off, and put them back on, and an-

swered, "Yes," to each of these questions. She was then asked again, "What else did he do in the car?" and made no answer. Further leading questions bringing her to the details of the act were answered in the affirmative. She was finally asked, "Did he have sexual intercourse with you?" Objection was sustained on the ground that the witness did not understand the term, the examiner returned to more detailed questions concerning the act, and she gave affirmative answers to all of these questions. She was again asked, "Did he do anything to you?" and she answered, "Yes." The question was asked as to what he did, and the witness finally answered, "He had intercourse with me." The examiner returned to the details of the act and elicited only two answers that were not yes or no. She was asked if she knew what defendant was doing to her, and she said no; if she had ever had that kind of a proceeding before, and she answered yes. The latter question was repeated with a more specific reference to the physical aspects of the act, and she answered no.

It is well established that one who is charged with crime may be held for trial only when the evidence establishing substantial grounds for such action is competent. *State ex rel. Durner v. Huegin,* 110 Wis. 189, 85 N. W. 1046; *Melli v. State,* 220 Wis. 419, 265 N. W. 79. It follows that when the action of the magistrate in holding a defendant for trial rests solely upon the testimony of an incompetent witness, he acts without jurisdiction, and the defendant is entitled to be released upon *habeas corpus. State ex rel. Durner v. Huegin, supra.* The test for competency, as far as is material here, has to do with the witness' capacity for communication and is thus stated by Mr. Wigmore in 1 Wigmore, Evidence, p. 915, § 495:

"It has two aspects:

"(1) First, it involves a capacity *mentally to understand* the nature of question put and to form and communicate intelligent answers. (2) Secondly, does it involve a sense

` of *moral responsibility,* of the duty to make the narration correspond to the recollection and knowledge, *i. e.,* to speak the truth as he sees it? It would seem that the clear absence of such a sense would disqualify the witness. . . ."

Applying this test to the mentality of the prosecutrix, as disclosed by the examination, it is our conclusion that the prosecutrix showed a complete inability to understand questions put and to form and communicate intelligent answers. The facts of the transaction were simple and uncomplicated, and her inability to recount them without having the words put into her mouth by the examiner, as well as her inability even to give a consistent series of affirmative and negative answers to leading questions, satisfies us that she wholly fails to meet this test of testimonial competency. Her testimony as to the nature of an oath and the distinction between right and wrong, especially with reference to telling the truth, is of such a character as to convince us that she did not have a sense of moral responsibility or an appreciation of the importance of an oath or the obligation to testify truthfully. The conclusion is fortified by the testimony of prosecutrix's mother to the effect that prosecutrix is feeble-minded, requires the assistance of the mother in dressing and in eating, and that the mother is unable consistently to carry on a conversation with the prosecutrix in which she understands the prosecutrix and the latter understands her. It is our conclusion that prosecutrix was wholly incompetent as a witness, and since there was no other evidence warranting the holding of defendant for trial if the evidence of prosecutrix were stricken, it follows that the trial court was in error in refusing the writ.

*By the Court.*—Order reversed, and cause remanded with directions to enter an order discharging plaintiff in error from custody.