STATE, Respondent, vs. DINGMAN, Appellant.

*September 12—December 2, 1941.*

*Harold V. Schoenecker,* attorney, and *Stewart G. Honeck* of counsel, both of Milwaukee, for the appellant.

For the respondent there was a brief by the *Attorney General, William A. Platz,* assistant attorney general, and *Daniel T. Hosek,* district attorney of Wood county, and oral argument by *Mr. Platz* and *Mr. Hosek.*

The following opinion was filed October 7, 1941:

FRITZ, J.   On October 10, 1935, the appellant, Elmer Dingman, was found guilty of murder in the first degree on a trial by jury in the circuit court for Wood county, Circuit Judge BYRON B. PARK, presiding.   The charge was based on the murder at about 3 a. m. on August 5, 1933, of Police Officer Beell, while he was investigating a burglary which was being committed by four men at the office of a brewery at Marshfield.   Judge PARK denied a motion for a new trial made by Dingman before judgment was entered; and subsequently on March 1, 1937, likewise denied Dingman's motion for a new trial on the ground of newly discovered evidence.   In July, 1940, Dingman filed his petition for a writ of *coram nobis* and the hearing of his motion for the writ was before Circuit Judge HERMAN J. SEVERSON, Judge PARK's successor in office.   On October 31, 1940, Judge SEVERSON entered an order denying Dingman's petition for a writ of *coram nobis,* and from that order this appeal was taken on December 18, 1940.   Dingman then also appealed from the judgment convicting him of the murder, which was entered October 10, 1935, and from the order of March 1, 1937, denying his motion for a new trial.   His appeals from the latter

order and the judgment were dismissed on April 15, 1941, on the ground that they were not taken within the time limited by statute. *State v. Dingman,* 237 Wis. 584, 297 N. W. 367.

On the trial which resulted in Dingman's conviction on October 10, 1935, the matter in controversy was principally the identification of Dingman as one of four men who participated in the commission of the burglary and the resulting murder of Officer Beell. All of the four escaped on the night of the crime. One of them, Edward Gabriel, was shot that night, and the next day his body was found on a roadside in Minnesota. Another participant, Joe Webster, was subsequently arrested and finally filed a plea of guilty to the charge of murder in the third degree, and was convicted and sentenced on that charge. After that Dingman, who had been returned to the state penitentiary of Nebraska to serve an unexpired sentence upon violating the terms under which he had been released on probation, was arrested upon being identified at the penitentiary by Frank Heinzen, who resided opposite the brewery office and claimed to have witnessed in part the commission of the crime. On the trial of Dingman his identification as a participant in the crime depended largely upon Heinzen's testimony; and Dingman's defense was based largely on an alibi which he sought to establish by proof that he registered as "Mr. and Mrs. J. Marks," with Helen Marks as his wife, at a hotel in Madison at 10:45 p. m. on August 4, 1933, and that under the name of "J. Marks" he had applied for an automobile license on the morning of August 5, 1933, at the Madison office of the state motor vehicle division. He did not testify at the trial. On his motion after judgment for a new trial based on affidavits as to newly discovered evidence he relied upon matters which he claimed disproved his participation in the crime and his identification by Heinzen's testimony. Likewise, in support of his motion for a writ of *coram nobis* Dingman relied upon many matters alleged in his petition and stated in affidavits filed by him to disprove

the identification of Dingman and his participation in the crime, and to impeach Heinzen's testimony as to his identification of Dingman; and to also impeach the testimony and condemn the conduct of Charles Pors as district attorney in investigating the crime and preparing the prosecution thereof, and in testifying as a witness at the trial after having been succeeded by Hugh Goggins, the district attorney who conducted the prosecution on the trial; and also to condemn the conduct of Frank Prange, a police informer, who had furnished District Attorney Pors with information concerning the identity of the persons, including Dingman, believed by the state's attorney to be responsible for Beell's murder. In reply to the verified allegations and statements relied upon by Dingman, the state filed counteraffidavits by which it traversed virtually all allegations or statements that were material on the hearing of the motion for the writ.

With the record in this state, presenting but issues of fact created by contradictory statements in the opposing affidavits in relation to but virtually the same matters and ultimate issues that were passed upon at the trial, and again on the motions for a new trial, no useful purpose would be served on this appeal by a review or discussion in detail of the substance or effect of the contradictory statements. It is well established in this state that the granting or denial of a writ of *coram nobis* is highly discretionary and will be reversed only in case of a clear abuse of discretion. *Ernst v. State,* 181 Wis. 155, 193 N. W. 978; *Gelosi v. State,* 218 Wis. 289, 260 N. W. 442; *State v. Wagner,* 232 Wis. 138, 286 N. W. 544. The writ cannot be resorted to in order to obtain a new trial on the ground of newly discovered evidence in relation to the issues litigated on the trial. As this court said in *Ernst v. State, supra,* p. 158,—

"Under our system of criminal procedure permitting a defendant to move for a new trial to test the correctness of the sentence by writ of error or by writ of *habeas corpus,* the

granting of a writ of *coram nobis* should be exercised with the utmost caution and care by the trial court, and it should be granted only in cases where it quite clearly appears that an error of fact existed before judgment but for which error the judgment would not have been entered."

No such error of fact can be held to clearly appear under the contradictory statements in the opposing affidavits.

Appellant contends, however, that there was an abuse of discretion on the part of the trial court in that it failed to consider on the motion for the writ of *coram nobis* an affidavit by Hilda Coduti, which was filed in support of appellant's motion for the writ. The only basis for charging such a failure is an erroneous statement in Judge SEVERSON's decision that the Coduti affidavit was also presented and used before Judge PARK on the motion for a new trial because of newly discovered evidence. Judge SEVERSON was obviously in error in stating that the Coduti affidavit, which was procured on May 31, 1940,—long after Judge PARK's death,— was used on the motion before Judge PARK, but this erroneous statement does not warrant concluding. on this appeal that Judge SEVERSON failed to consider the affidavit in passing upon Dingman's motion and that, consequently, there was an abuse of discretion in that respect. Moreover there is nothing stated in the affidavit which can be held to establish that there existed any error of fact before the judgment of conviction but for which error the judgment would not have been entered.

That conclusion is also applicable to appellant's contention that Judge SEVERSON's refusal of Dingman's offer to have the court take and hear his testimony and that of his witnesses (instead of using their affidavits) constituted an abuse of discretion. Appellant claims this ruling was prejudicial error because his veracity and credibility and that of his witnesses was directly challenged throughout the state's opposing affidavits, and, particularly, in an affidavit by Charles Pors, who

was permitted by the court, over appellant's objection on the hearing of the motion, to act in the capacity of district attorney and also to use his own affidavit. There was no abuse of discretion in refusing to allow the testimony to be taken orally in court. As was held in *Ernst v. State, supra,* it is within the discretion of the court on such a hearing to dispose of the issues upon either affidavits and sworn statements or upon testimony of witnesses taken before the court. Neither can it be considered reversible error for the court to take into consideration the affidavit made by Pors. His statements therein were relevant and proper in refutation of statements in affidavits used on behalf of Dingman in relation to the alleged conduct and statements by Pors while he was properly in charge of the investigation and the prosecutions of the crime as district attorney in the first instance. Consequently it was his duty as a citizen to state in an affidavit the facts within his knowledge in refutation of the statements in affidavits relied upon by Dingman as to alleged conduct and statements by Pors. It was not error on the part of the court to take the statements in Pors' affidavit into consideration even though it may have been improper, under even the peculiar circumstances herein, for Pors to appear also in his capacity as district attorney on the hearing of the motion. *O'Neil v. State,* 189 Wis. 259, 207 N. W. 280; *Zeidler v. State,* 189 Wis. 44, 206 N. W. 872; *Baumgartner v. State,* 198 Wis. 180, 186, 223 N. W. 419, 224 N. W. 474. However, there was nothing in Pors' conduct in these respects because of which there can be deemed to have existed an error of fact before judgment but for which error the judgment would not have been entered.

It is further contended by appellant that the court abused its discretion in not granting the writ on the ground that Pors and also Goggins, who alone was in charge of the prosecution as district attorney at the time of the trial, had suppressed evidence which would have produced a different verdict and

judgment. In this connection Dingman complains of the failure of Pors and Goggins to give Dingman or his counsel the names of Frank Prange, Melvin Passolt, and Hilda Coduti, and the information received from or in regard to them by Pors and Goggins. Frank Prange, who resided at St. Paul, was the informer through whom Pors received the first information upon which to suspect that Joe Webster and Edward Gabriel were involved in the burglary. Melvin Passolt was in charge of the Minnesota bureau of criminal apprehension. He knew Webster, Gabriel, and Dingman and their associates and was of the opinion that the evidence did not connect Dingman with the crime. He was also of the opinion and advised Pors that Webster was not connected with the crime, although Webster subsequently pleaded guilty. Passolt claimed that Heinzen had failed to identify Dingman from a photograph which was shown Heinzen in 1933 or 1934 at St. Paul. Hilda Coduti was the consort of Edward Gabriel, and she saw him leave home with Webster and Vic Allen, and a third man whom she did not know. She claims he was not Dingman and that she never saw the latter associate with Gabriel. It does not appear that any of these witnesses, Prange, Passolt, or Coduti, had knowledge of any circumstance that can be deemed to have more than but a slight bearing on the issues as to the identification and the participation of Dingman in the crime. At best it was merely to the effect that neither of them saw or knew of Dingman's associating with Gabriel and Webster, and that Hilda Coduti did not see Dingman with them when they left St. Paul on the afternoon before the crime was committed. Certainly their testimony, which was largely but negative in its nature, likewise would not clearly show that an error of fact existed before judgment but for which error it would not have been entered.

Appellant's final contentions are that the real controversy has not been fully tried and the ends of justice have not been

met. These issues could have been raised on appeals from the judgment and the orders denying the motions for a new trial which were dismissed because not taken within the time limited by law. *State v. Dingman, supra.* However, as was said in *In re Ernst,* 179 Wis. 646, 649, 192 N. W. 65, 30 A. L. R. 681, "When a proper remedy is afforded by appeal or ordinary writ of error, the writ of error *coram nobis* will not lie." The merits of the original controversy are not in issue in *coram nobis* proceedings, and the writ of error *coram nobis* is not available for the purpose of obtaining a new trial on the grounds of alleged newly discovered evidence relating to matters litigated at the trial. An alleged error of fact which justifies granting the writ must be such as would have prevented conviction, not merely new evidence which might have caused a different result. *Hysler v. State* (Fla.), 1 So. (2d) 628. Neither will the writ be granted on the ground that the conviction was obtained by perjured or mistaken testimony. *Ernst v. State, supra; State v. Superior Court,* 15 Wash. 339, 46 Pac. 399; *Keane v. State,* 164 Md. 685, 166 Atl. 410.

*By the Court.*—Order affirmed.

A motion for a rehearing was denied, without costs, on December 2, 1941.