STATE EX REL. SHIELDS, Appellant, vs. PORTMAN, Sheriff, Respondent.

*November 13—December 8, 1942.*

6

For the appellant there was a brief by *Bird, Smith, Okoneski & Puchner,* attorneys, and *Richard P. Tinkham, Jr.,* of counsel, all of Wausau, and oral argument by *Charles F. Smith.*

For the respondent there was a brief by the *Attorney General, William A. Platz,* assistant attorney general, and *E. E. Hohman,* district attorney of Marathon county, and oral argument by *Mr. Platz.*

FOWLER, J.   A writ of *habeas corpus* was issued requiring the defendant sheriff to bring the relator before the court for inquiry as to why he was held in prison.   The relator had been bound over to the circuit court for trial by a magistrate upon a complaint charging him in three counts with the commission of three criminal offenses: (1) Manslaughter in the first degree; and (2) negligent homicide, by killing a nine-year-old girl while driving his automobile on a public highway; and (3) unlawful operation of an automobile on the highway, a misdemeanor.   At close of the hearing the relator moved that he be discharged on the ground that no proof had been made of commission of any crime or of probable cause to believe the relator guilty.   The court denied the motion, and found "that an offense had been committed and there is

probable cause to believe the defendant guilty thereof," and bound the relator over for trial.

The three offenses charged are stated in the Wisconsin statutes as follows:

"340.10 *Manslaughter, first degree.* The killing of a human being, without a design to effect death, by the act, procurement or culpable negligence of any other, while such other is engaged in the perpetration of any crime or misdemeanor not amounting to a felony, or in an attempt to perpetrate any such crime or misdemeanor, in cases where such killing would be murder at common law, shall be deemed manslaughter in the first degree."

"340.271 *Negligent homicide.* (2) Any person who, by the operation of any vehicle at an excessive rate of speed or in a careless, reckless or negligent manner constituting or amounting to a high degree of negligence, but not wilfully or wantonly, shall cause death of another, shall be deemed guilty of negligent homicide and upon conviction thereof shall be punished by imprisonment in the county jail not more than one year or by a fine of not more than $1,000, or by both such fine and imprisonment."

"85.40 *Speed restrictions and unlawful operation of vehicles.* (1) It shall be unlawful for any person to operate any vehicle upon a highway carelessly and heedlessly, in wilful or wanton disregard of the rights or safety of others, or without due caution and circumspection or at speeds greater than those specified in this section or in a manner so as to endanger or be likely to endanger the property, life, or limb of any person, or without due regard to the traffic, surface, width of the highway, and any other condition of whatever nature then existing."

We will first consider whether the offense of unlawful operation of an automobile is shown, as commission of a misdemeanor is involved in manslaughter in the first degree, and violation of some provision of sec. 85.40 (1), Stats., is involved in negligent homicide as appears from the terms of the statutes quoted.

To constitute violation of sec. 85.40 (1), Stats., there need only be driving an automobile on a highway, (a) carelessly and heedlessly or without due caution and circumspection; (b) or at speeds greater than specified in sec. 85.40; (c) or so as to be likely to endanger life or limb; (d) or without due regard to traffic and any other conditions existing.

There is no statute limiting speed on the highway involved to any specified rate per hour. The only reference to speed limitation in sec. 85.40, Stats., is that fixed by sub. (5) which provides that in traversing grades such speed must be maintained as will permit stopping within one half the distance that approaching traffic can be seen.

Sub. (5) was not violated because relator could see children at a distance of over six hundred feet, as he approached the crest of the rise in the road. At sixty miles per hour an automobile can be stopped at two hundred twenty feet; at seventy miles per hour at three hundred nineteen feet, as shown by the table prepared by the highway commission. Therefore, at sixty-five miles per hour one could stop in three hundred feet or less, and the relator did not violate sub. (5), as there is no evidence as to how far ahead the relator's view was unobstructed when he first saw the children one hundred eighty-five feet away.

We discover nothing in the evidence that warrants a finding that the relator was driving "in wilful or wanton disregard of the rights or safety of others." So violation of sub. (1) of the statute depends on whether he was driving in violation of any of the provisions above designated as (a), (c), and (d). And this simmers down to whether he was driving carelessly or heedlessly or "without due caution and circumspection," or in a manner "likely to endanger the . . . life, or limb of any person," or "without due regard to the traffic" or any other existing condition.

In view of the facts as above stated and the commonly known traits of children of the age of the two girls as to heedlessness when playing or when together engaged in conversa-

tion, the magistrate was justified in finding reasonable probability of the guilt of the relator of unlawful operation of an automobile. This alone, however, would not warrant holding the relator in custody. The penalty for violation of sec. 85.40 (1), Stats., is a fine of not more than $100 or imprisonment of not more than six months. Sec. 85.91 (3). This offense is punishable by a justice of the peace, sec. 360.01, and did not empower the magistrate to hold the relator to the circuit court for trial, sec. 360.30, or empower the sheriff to hold him under a commitment for such trial.

But even if the evidence does show that the offense under sec. 85.40 (1), Stats., was committed, it does not follow that the commission of this misdemeanor rendered the relator liable for prosecution for manslaughter in the first degree. To render him so liable, the circumstances must also have been such as to make him guilty of murder under common law, and to render him so liable he must have been guilty of such recklessness or wanton conduct as to imply the "malice aforethought" necessary to constitute common-law murder. As to the conduct involved in driving an automobile so as to imply this malice this court said in *Maxon v. State,* 177 Wis. 379, 383, 187 N. W. 753:

"Now, and evidently at the time of the adoption of this [the manslaughter in the first degree] statute, the generally accepted doctrine is and was that an unintentional killing of a human being through the reckless and wanton doing of an act, which from its nature was capable of doing great bodily harm to a human being, might be deemed sufficient to sustain a finding of the implied malice as made such killing a common-law murder."

We perceive nothing in the evidence to indicate any wanton or reckless disregard of life or bodily harm in the conduct of the relator in the evidence produced before the magistrate in the instant case. If sec. 340.10, Stats., were the only one involved the relator should have been discharged.

Whether the evidence supports holding the relator for trial under sec. 340.271 (2), Stats., the negligent-homicide statute, is another matter. We have already indicated that the evidence is such as to support a charge of unlawful operation of an automobile. The acts pointed out that would constitute violation of that statute by the relator are operating his automobile carelessly and heedlessly, or without due caution and circumspection, or so as to be likely to endanger life or limb, or without due regard to the traffic and any other conditions existing. Doing any one of these things would constitute operating in a careless or negligent manner, and this would constitute a negligent killing of the child. The only thing remaining to fix liability of the relator to trial for "negligent homicide" under the statute is that his negligence was of a "high degree."

At first blush it would seem that to validate the negligent-homicide statute the statute should contain within itself a definition of "high degree." The query involved in the statute is much like the query "how long is a string." However, this court ever since enactment of sec. 192.29 (6), Stats., has left it to the jury to determine what constituted "slight" negligence under that statute that provides that such a degree of negligence of a plaintiff did not bar recovery for negligence of a railroad company at a highway crossing when plaintiff's negligence was not more than slight. If a jury may determine that negligence is of a slight degree it would seem competent for them to determine that it is of "high degree." Also it is for the jury to determine under the comparative-negligence statute, sec. 331.045, whether a plaintiff's negligence is equal to or greater than the negligence of a defendant. This is certainly leaving it to a jury to determine degrees of negligence, and we can see no more difficulty in determining that negligence is of a "high degree" than in determining that it is of equal or a higher degree.

From the above it follows that if the testimony of the seven-year-old girl is properly receivable in evidence, and the jury on the trial are satisfied beyond reasonable doubt by it, and all the evidence bearing upon the point that the child when struck was walking partly on the edge of the concrete, or wholly on the concrete, than the further inference if drawn may properly be drawn that the relator was negligently driving his automobile, and that his negligence in so driving was of a high degree. If, however, the evidence on the trial shall show that the child darted in front of the car a different situation may well be presented.

The relator's counsel on the hearing before the magistrate objected to receiving the evidence of the seven-year-old child because of the omission to administer the statutory form of oath, sec. 326.03 (1), Stats., and also because a child so young is incapable, and the instant child anyhow was incapable, of understanding the obligation to make truthful answers to questions asked, then the child's statements were improperly received and should be disregarded, and without them there is no evidence to warrant holding the defendant for trial. As to the child's testimony, the case of *DeGroot v. Van Akkeren,* 225 Wis. 105, 113, 273 N. W. 725, seems to settle its admissibility. It is there stated:

"Whether a witness who does not understand the nature and obligation of an oath, but who does understand the difference between truth and falsehood and the wickedness or wrongfulness of telling anything but the truth, may be considered competent in view of our statute, may be somewhat doubtful. We think, however, in view of the long practice that seems to have prevailed among the trial courts of this state, a child who has sufficient mental capacity, in the opinion of the trial court, and who comprehends the difference between truth and falsehood and who solemnly promises to tell the truth, may be permitted to testify without being formally sworn."

Questions were put to the child by the magistrate before she was examined as to the facts that with her answers establish her competency within the rule of the *DeGroot Case, supra.*

*Hancock v. Hallmann,* 229 Wis. 127, 281 N. W. 703, is referred to as ground for rejecting the testimony of the child and ordering the relator's discharge. The testimony of the child in the instant case presents no such picture as the testimony of the alleged incompetent person in the *Hancock Case.* We have read the record of the child's examination and her answers to the questions put to her both by the court to determine her competency and by counsel to ascertain the facts connected with the collision, and we consider that the magistrate committed no error in receiving it.

Counsel contends that under sec. 326.03 (1), Stats., a rule adopted by the supreme court that became operative July, 1941, and since the *DeGroot Case, supra,* was decided, the testimony of the child was improperly received. The section provides that all witnesses shall be sworn before testifying, prescribes a form of oath that may be administered, and provides that the oath shall be repeated aloud by the witness. This being a rule promulgated by the court we may properly say that no such implication was intended and none such should be inferred. The statute is directory rather than mandatory. Nor is it to be implied that testimony should not be received unless an oath is administered if by reason of a child's age it appears that the child may be better made to understand her obligation to tell the truth than by administering an oath to her. The rule does not contemplate the rejection of the testimony of any witness for want of an oath who would have been competent to testify without it at the time the rule was adopted. The rule goes not to competency of testimony but merely to the proper way of administering the oath when it is necessary to administer it. Nothing was intended or even hoped for by adoption of the rule than substituting for the undignified, un-

impressive, mumble-jumble way in which the oath was often administered by clerks in judicial proceedings, a ceremonial administration of the oath that would vest the taking of it with such dignity and solemnity as to impress the witness with the obligation imposed by it.

*By the Court.*—The order of the circuit court is affirmed.