WILSON, Plaintiff in error, vs. THE STATE, Defendant in error.

*September 14—October 9, 1956.*

For the plaintiff in error there was a brief by *Robert J. Beaudry,* attorney, and *William B. Rubin* of counsel, both of Milwaukee, and oral argument by *Mr. Rubin* and *Mr. Beaudry.*

For the defendant in error there was a brief by the *Attorney General* and *William A. Platz,* assistant attorney general, and *William J. McCauley,* district attorney of Milwaukee county, and *Hugh R. O'Connell,* special assistant district attorney, and oral argument by *Mr. O'Connell* and *Mr. Platz.*

BROWN, J. Sec. 958.07, Stats. (new number), provides that the writ of error *coram nobis* may be issued under certain circumstances. It is a writ of long standing. The leading Wisconsin cases concerning it are *In re Ernst* (1923), 179 Wis. 646, 192 N. W. 65, and *State v. Dingman* (1941), 239 Wis. 188, 300 N. W. 244. These cases and the texts make it clear that this writ is highly discretionary and the determination of the court to which the application was made will not be reversed unless it very clearly appears that discretion was abused. The writ will not lie if an appeal may be taken to correct the errors alleged by the petitioner. The writ may be granted when facts not of record are produced, by affidavit or testimony, which were not known to the trial court at the time it entered judgment and which if known would have prevented the entry of the judgment complained of.

Neither the petition nor the argument of counsel brought to the court any new facts whatever. They simply review those portions of the record in which they contend the trial court committed error. If the objections are well taken, these matters were properly reviewable in an appeal from the judgment. No foundation has been laid upon which the writ of error *coram nobis* could be granted and, accordingly, the denial of the writ was not an abuse of the discretion of the trial court. Its order denying the petition for a writ of error *coram nobis* is affirmed.

In support of the motion for a new trial the plaintiff in error submits that he was convicted without due process of law, particularly in that the finding respecting his sanity at the time his case was heard was based upon obsolete and incompetent opinions, the plea of insanity at the time of the commission of the offense was never tried nor heard, that no competent evidence was had that Mrs. Wilson was alive at the time of the alleged killing and that the plea of guilty was involuntary.

The medical experts who pronounced Wilson sane at the time of hearing testified, among other things, that he could distinguish between right and wrong and knew the nature and quality of his acts. This is the time-honored "McNaghten rule" for the determination of sanity. In this state we have defined legal insanity as " 'such a perverted condition of the mental and moral faculties as to render the person incapable of distinguishing between right and wrong.' " *Oehler v. State* (1930), 202 Wis. 530, 535, 232 N. W. 866, citing *Jessner v. State* (1930), 202 Wis. 184, 231 N. W. 634. Sec. 357.13 (1), Stats. (now sec. 957.13 (1)), provides:

"If the court is reliably advised before or at his trial or after conviction and before commitment that the defendant is probably insane or feeble-minded, the court shall in a summary manner make inquiry thereof."

Sub. (2) thereof provides:

"If the court finds that the defendant is insane or feeble-minded, his trial or sentence or commitment shall be postponed indefinitely. . . ."

Counsel for the defendant submit that the McNaghten rule is obsolete and call upon us to adopt some other, unspecified, test. The state contends that the defendant's appreciation of the distinction between right and wrong is immaterial at this stage of proceedings and what is really important is his capacity to confer with his counsel and assist in his own defense. We agree with the state that trial should be indefinitely postponed if the defendant's mental condition renders him incapable of conferring with his attorneys in his own behalf but do not adopt the theory that defendant's ability to distinguish between right and wrong at the time of trial is immaterial as long as that ability remains a test of his sanity. The statute, sec. 957.13, applicable at that time when his mental state is reliably questioned, directs inquiry be made as to sanity and provides measures to be taken if

insanity is found. It was obligatory, therefore, for the court to inform itself concerning Wilson's sanity at the time of hearing. The court proceeded to do so and we find no error in using, in the investigation, the test of insanity recognized and approved in this jurisdiction at least since *Oehler v. State, supra,* especially as the legislature in the interval has not provided a different test or definition. By the testimony of the alienists the trial court was informed that Wilson was presently sane, as that term is understood in the law, *and* that he was mentally capable of acting in his own behalf in consultation with his attorney. Under the circumstances the court could hardly have resolved the question of Wilson's mental state other than it did and nothing in the entire record even suggests that the defendant lacked adequate mental capacity at any time during the several hearings. We find no error in this respect.

Plaintiff in error now submits that his plea of guilty was involuntary. The record completely refutes this contention. The portions of it already quoted dealing with his application to withdraw his original pleas indicate how little merit there is in the contention that his plea of guilty was involuntary or produced by coercion of any nature. He also complains that the question of his sanity at the time of the offense was never tried. Of course it was not. He withdrew the plea which raised that issue and by the substituted plea of guilty, which, as we have said, was voluntary, made by a competent person with advice of counsel, he conceded his responsibility. His plea likewise concedes that it was he who brought about his wife's death, although he submits now that there is no competent evidence that he did so. The evidence was ample. In his statement to the district attorney, introduced in evidence after judgment but before sentence, Wilson expressly and in great detail admitted the fact that he struck his living wife with his cleaver and then cut her up with the other tools of his trade; and in reply to the trial judge's direct question

he replied: "All right. I killed her." We find no merit in his present suggestion that she died from natural causes.

Counsel submit that the attorney who represented Wilson originally was inexperienced and incompetent, wherefore the defendant did not receive justice. The attorney in question has been an active and respected member of the bar of this court since the year 1905. The record does not support the assertion that Wilson's rights were in any way prejudiced by his choice of counsel. Our own labor to make sure that plaintiff in error received complete protection under due process of the laws has been unnecessarily increased by the present attorneys' failure to supply an appendix in the form and content required by the rules of this court. We trust that these omissions will not be cited to us later as a measure of the capacity of current counsel.

We conclude that plaintiff in error's motion for a new trial was properly denied.

*By the Court.*—Orders and judgment affirmed.