THE PEOPLE OF PUERTO RICO, Plaintiff and Appellee, *v.* AGRIPINO PACHECO, Defendant and Appellant.

No. 16144. Decided August 11, 1961.

276

*Héctor Lugo Bougal* and *Jorge Díaz Cruz* for appellant. *José Trías Monge, Secretary of Justice, Rafael L. Ydrach Yordán, Fiscal of the Supreme Court,* and *Ramón C. Ruiz Sánchez, Assistant Fiscal of the Supreme Court,* for appellee.

Division composed of Mr. Justice Blanco Lugo, as Chief Judge of Division, and Mr. Justice Rigau and Mr. Justice Dávila.

MR. JUSTICE DÁVILA delivered the opinion of the Court.

The instant case raises the same question we decided in *People* v. *Quiles, ante,* p. 61. A single detail distinguishes it from that case and constitutes reason enough not to decide it on the basis of that decision. The reason is that in the case at bar the information filed by the district attorney " is based on testimony of witnesses examined under oath before the Hon. Waldemar del Valle, District Judge of Ponce," who was the same judge who determined probable

cause to issue a search warrant for the purpose of searching appellant's house, determined the existence of probable cause for the arrest, and presided at the trial of the case on the merits.

Thus, the only issue distinguishing this case from the *Quiles* case is that here the information is based on the testimony of witnesses examined *before* the judge who later heard the case. In *Quiles*, the judge only had before him sworn statements. In this case the witnesses appeared personally and were examined *before* the magistrate. Does this difference in the facts justify a different result?

In the *Quiles* case, citing *In re Marín*, 81 P.R.R. 267 (1959) we said:

"In short, it is not and has never been the constitutional standard that any prior contact with the evidence, regardless of its scope and effect, disqualifies a judge from deciding subsequently the merits of a controversy. In each situation where that constitutional defect is alleged we must consider the nature of the procedure, the degree of connection between the judge and the evidence, and the probable influence of that connection on his disinterestedness and impartiality, and weigh those factors in the light of the moral integrity and professional discipline essential to any judge worthy of the name."

Therefore, keeping the foregoing views in mind, we must determine whether the fact that the witnesses were examined before the judge who later presided at the trial affects his impartiality to a point requiring reversal for a violation of the due process of law guaranteed by the Constitution to every person accused of a public offense.

Just as in the *Quiles* case, appellant herein cites *In Re Murchison*, 349 U.S. 133, in support of his appeal. But, repeating what we said in *Quiles*, we explained the *Murchison* case in *In re Marín* and we distinguished it from facts analogous to those of the case at bar. And we added, furthermore, that in *Nilva* v. *United States*, 352 U.S. 385 (1957) and *Green* v. *United States*, 356 U.S. 165 (1958) the Supreme

Court of the United States had considerably limited the majority opinion in *Murchison*.

In *In re Marín* we said, and we repeated it in *Quiles*, that in every case the nature of the proceeding, the degree of connection between the judge and the evidence, and the probable influence of that connection on his disinterestedness and impartiality must be considered. In the instant case the transcript of the evidence of the trial on the merits has not been sent up. We only have before us the transcript of the incident regarding the search. Hence, we must consider the question purely in its aspect of law, since there has been no attempt to prove that in fact the judge acted under the influence of prejudice and partiality.

We should make it clear that in this case, the judge before whom the witnesses for the prosecution were examined made no determination on the innocence or guilt of the defendant. He only determined the existence of probable cause, and in the absence of proof to that effect, there is no showing to the effect that something prevented him from subsequently making a fair and impartial determination as to defendant's innocence or guilt, after hearing and weighing the evidence for the prosecution and for the defense.

Considering the question in its theoretical aspect, we find that it has been held that a judge's determination of the existence of probable cause for the detention of a defendant in a habeas corpus proceeding, does not disqualify him from hearing the case on the merits. *State* v. *Schweider*, 94 N.W.2d 154 (Wis. 1959).

In *MacKay* v. *McAlexander*, 268 F.2d 35 (C.A. 9, 1959) the issue was raised that a fair hearing had not been had before the Immigration and Naturalization Service, because the hearing officer was the same person who had served as hearing officer in the deportation proceedings.

In deciding the issue, the Court said at p. 39:

"The unfavorable opinion of a party or witness which a hearing officer or a trial judge may entertain as a result of

evidence received in a prior and connected hearing involving that individual is not 'bias' in the invidious sense . . . No . . . lack of due process was inherent in the fact that the same hearing officer presided in both proceedings."

 Normally, the issue of prejudice and partiality on the part of the judge is raised by means of a motion supported by a sworn statement, establishing the grounds for such prejudice and partiality.[1] In considering the question of prejudice and partiality raised by an accused in a motion and complementary sworn statement in a case whose facts are similar to the facts of this case, in *Craven* v. *United States*, 22 F.2d 605 (1927), *cert. denied*, 276 U.S. 627, 72 L. Ed. 739, the Court of Appeals for the First Circuit stated:

"At most, then, the affidavit charges a 'bias and prejudice,' grounded on the evidence produced in open court at the first trial, and on nothing else. We hold that such bias and prejudice (if these be appropriate terms for a well-grounded state of mind, 255 U.S. 42, 41 S. Ct. 236, 65 L. Ed. 481) is not personal; that it is judicial. 'Personal' is in contrast with judicial; it characterizes an attitude of extra-judicial origin, derived non coram judice. 'Personal' characterizes clearly the prejudgment guarded against. It is the significant word of the statute. It is the duty of a real judge to acquire views from evidence. The statute never contemplated crippling our courts by disqualifying a judge, solely on the basis of a bias (or state of mind, 255 U.S. 42, 41 S. Ct. 236, 65 L. Ed. 481) against wrongdoers, civil or criminal, acquired from evidence

[1] On the date of the trial § 23 of the Code of Civil Procedure (32 L.P.R.A. § 131) established the cases where a judge must disqualify himself. That section comes from California and corresponds to § 170 of the Code of Civil Procedure of that state. It was amended there to include prejudice and partiality as a ground for disqualification. Here and in the *Quiles* case we have considered the question, because of the allegation of a violation of the due process of law to which every accused is entitled, and if in fact such constitutional guarantee had been violated, the question should be considered even in the absence of a specific statute authorizing said allegation. *Chessman* v. *Teets*, 354 U.S. 156, 165 (1957). Under Rule 63.2 of the Rules of Civil Procedure of 1958 a judge may be challenged for prejudice.

presented in the course of judicial proceedings before him. Any other construction would make the statute an intolerable obstruction to the efficient conduct of judicial proceedings, now none too speedy or effective.

"On the theory now urged, no judge could be qualified to sit at two trials of the same case. It makes no difference whether the second trial results from a disagreement, grounded on the incompetence or even the corruption of the jury, or from the allowance by the presiding judge of a motion for a new trial, or from error maintained in a court of review. If, from the first trial, the judge acquires a bias or state of mind for or against either party, as of course he must, he is disqualified.

" . . . . . . . .

"If, as happened in many of the cases reported, this statute is permitted to be used by overzealous counsel, scanting their professional duty to the public weal and to the court as the protector of the public right, as a method of procuring delay (U.S. v. Fricke [D.C.] 261 F. 541), and in many instances a new trial before a judge who must approach, de novo, problems already considered by another judge (Ex parte Am. Steel Barrel Co., 230 U.S. 35, 44, 33 S. Ct. 1007, 57 L. Ed. 1379) the statute will leave immune from attack only the amorphous dummies reprobated by Mr. Justice McReynolds as unbecoming receptacles for judicial power (255 U.S. 43, 41 S. Ct. 236, 65 L. Ed. 481). Only the timid and the incompetent, if there be now or hereafter any such on the federal bench, will be free from attack under this statute."

■ *Gallarelli* v. *United States*, 260 F.2d 259 (C.A. 1, 1955) reaffirmed the decision in the *Craven* case, just cited.

It has been established that unless prejudice and partiality on the part of a hearing judge is specifically demonstrated, the fact that the same judge has participated in prior proceedings connected with the case does not disqualify him from hearing the case. The fact that he heard a case which is subsequently reversed, is not ground either for his disqualification. *State* v. *Walker*, 166 A.2d 567 (N.J. 1960); *United States* v. *Richmond*, 178 F. Supp. 44 (D.C., Conn. 1958); *Ferrari* v. *United States*, 169 F.2d 353 (C.A. 9,

1948); *Wilson* v. *Renfroe*, 91 So. 2d 857 (Fla. 1956); Annotation 57 L. Ed. 1003; and *cf.* Frank, *Disqualification of Judges*, 56 Yale L. J. 605 (1947).

On this score we said in *In re Marín*, and ratified in *Quiles:*

" . . . In civil and criminal procedures there are numerous occasions when the judge who is going to decide the suit on the merits acquires in some way, to a greater or lesser extent, initial knowledge of the facts, or is required to accept a particular appraisal of the pleadings on which to base his determinations. Aside from the elementary question of the 'image' that the judge may build upon examining well or poorly drafted allegations, we cite, by way of example, a judge's rulings on motions for dismissal, petitions for restraining orders, motions for summary judgment and new trial, and his participation in pre-trial conferences, in the acts of reconciliation of certain divorce cases, and in the innumerable incidents resulting from the modern methods of discovery of evidence. More so, in administrative as well as in criminal and civil procedure, the action of a judge who retries a case after his judgment in the former trial was reversed, when he had the opportunity to know all the details of the evidence, is not void as unconstitutional. . . ."

In addition to the foregoing, the fact is that the practice challenged here, to the effect that the committing magistrate may hear the case on the merits, has been followed in Puerto Rico for the past fifty years. And it is a well-established principle in constitutional law that in order to challenge a practice that has been sanctioned by the passing of time on the ground that it violates the due process of law, it is imperative that very sound grounds be alleged. A challenge on mere theoretical principles would not be sufficient. *Frank* v. *Maryland*, 359 U.S. 360 (1959).[2]

---

[2] The question involved in that case consisted in the determination of whether an inspection of a house without a warrant, by a health inspector, violated the guarantee of the due process of law. It was held that use sanctioned the practice.

282

■ We now consider appellant's allegation challenging the search of his residence. He contends that the search warrant is null. He rests his contention on the fact that § 511 of the Code of Criminal Procedure (34 L.P.R.A. § 1821) permits searches during the hours of the night only when the person requesting the order clearly establishes in the sworn statement that he is positive that the property is in the place to be searched. This security requirement fixed by law in order that a warrant may be served during the hours of the night, is clearly intended for the protection of the inviolability of the home. It is a safeguard against an arbitrary use of the power given to the State to search the home of citizens. Clearly, a search at night must be the exception. It is only justified when every circumstance convinces the law-enforcement officers that the evidence proposed to be seized would disappear if the search were left for the following day. Appellant claims that notwithstanding that the sworn statement filed in this case does not disclose such certainty, it was issued to be executed during the hours of the day or at night.

Upon examining the sworn statement, we find that it discloses that the affiant was positive that in the residence to be searched the *bolita* material described in the statement could be found. He was so positive, that he assures having seen it. Statements drawn up in the same sense as the statement under consideration were held to be sufficient in *People* v. *Negrón*, 72 P.R.R. 825 (1951) and *People* v. *De Jesús*, 73 P.R.R. 699 (1952).

None of the errors assigned was committed. The judgment will be affirmed.