Sasse vs. The State.

SASSE, Plaintiff in error, vs. THE STATE, Defendant in error.

*March 7 — March 22, 1887.*

CRIMINAL LAW AND PRACTICE. *(1, 2) Improper remarks by prosecutor: Error, when cured: New trial. (3–5) View of premises: Presence of counsel: Absence of prisoner: Object: Evidence.*

1. An error in permitting the district attorney, in opening the case to the jury, to state that the defendant committed a crime in Germany and fled from justice, and after landing in this country committed another crime, etc., is *held* to render a new trial necessary, although the trial judge, in ruling that such statement could be made, suggested that the fact that the accused had committed one crime was no evidence that he committed the crime for which he was being tried, and afterwards instructed the jury not to regard such statement and that it was not in the case.

2. When the first witness for the prosecution was called he did not respond, and the district attorney said, "Perhaps somebody has got hold of him." Being reproved by the trial court, he said "I will prove it before I get through." *Held,* improper.

3. If counsel are allowed to accompany the jury upon a view of a place where a crime is alleged to have been committed, they should not be allowed, while there, to discuss the localities or call the attention of the jury to the facts.

4. *Quære,* whether a view may be taken in the absence of a defendant who has not expressly waived his right to be present.

5. The object of a view is merely to assist the jurors in weighing and applying the evidence. The knowledge derived from the view itself is no part of the evidence.

ERROR to the Circuit Court for *Dodge* County.

The case is sufficiently stated in the opinion.

*Geo. W. Sloan,* for the plaintiff in error, argued, among other things, that the language used by the district attorney in his opening address was improper, and the failure of the court to stop him *then* and *there* is good ground for a new trial. 1 Am. Crim. Rep. 580; *State v. Williams,* 65 N. C. 505; *Ferguson v. State,* 49 Ind. 33; *State v. Kring,* 64 Mo. 591; *S. C.* 2 Am. Crim. Rep. 313; *Long v. State,* 56 Ind. 182;

Sasse vs. The State.

*Comm. v. Scott*, 123 Mass. 239; *Austin v. People*, 102 Ill. 261; *People v. Tyler*, 36 Cal. 522; *State v. Graham*, 62 Iowa, 108; *State v. Williams*, 63 id. 135; *Koelges v. G. L. Ins. Co.* 57 N. Y. 638; 33 Conn. 471; 41 N. H. 317; 75 N. C. 306; *Williams v. State*, 61 Wis. 281. The accused must be present at a view, unless he waives the right. Sec. 4693, R. S.; Const., art. I, sec. 7; *People v. Jones*, 11 Pac. Rep. 501; *People v. Bush*, 68 Cal. 623; 53 Cal. 60; Cooley's Const. Lim. sec. 319; 4 Am. Crim. Rep. 417; *Benton v. State*, 30 Ark. 350; *Dempsey v. People*, 47 Ill. 325; *People v. McKay*, 18 Johns. 217; *Burley v. State*, 1 Neb. 385; *Work v. State*, 2 Ohio St. 296; *Cancemi v. People*, 18 N. Y. 128; *Wilson v. State*, 16 Ark. 01; *Bond v. State*, 17 id. 290; *Brown v. State*, 16 Ind. 496. The *Attorney General*, for the defendant in error, contended, *inter alia*, that the error in permitting the improper marks by the district attorney was cured. *State v. Deffia*, 69 Mo. 490; *State v. Wilson*, 90 N. C. 736; *State v. vers*, id. 738; *Mimms v. State*, 16 Ohio St. 221; Wharton's Cr. Pr. & Pl. sec. 803; *State Bank v. Dutton*, 11 Wis. ; *Richards v. Noyes*, 44 id. 609. It was not error not to order the accused to be present at the view. Consent was given in open court that the district attorney and counsel for the accused should accompany the jury, and there was no order restraining the accused from going. See *People v. Bonney*, 19 Cal. 445; *State v. Adams*, 20 Kan. 323; *State v. Congdon*, 14 R. I. 458; *Rutherford v. Comm.* 78 Ky. 639; *Hill v. State*, 17 Wis. 676; *State v. Paylor*, 89 N. C. 539.

ORTON, J. The plaintiff in error was tried and convicted, in the circuit court of Dodge county, for the crime of murder in the first degree for the killing of William Martin, in said county, on the 10th day of July, 1885, and was sentenced to imprisonment in the state prison during his natural life. We refrain from any further reference to the evidence in the case than to say that it appears to have

Sasse vs. The State.

been wholly circumstantial. At the first opening of the case to the jury by the district attorney, and before any testimony had been taken, he stated to the jury as follows: "The defendant committed a crime in the old country,— in Germany,— and he fled from justice. He engaged passage in one ship, and then in another. He landed in this country, and went to Philadelphia, committing a crime there. He admitted that he knocked a hole in a man's head in the old country, and by his admission fled and committed a crime in Philadelphia,— a crime on one of the citizens of this country." To these remarks to the jury the defendant's counsel objected. The circuit court overruled the objection, with the remark as follows, viz.: "I suppose the previous history of the defendant may be given, but the fact that he committed one crime is no evidence that he committed this. The court permits the district attorney to proceed as far as to state the previous history of the defendant, with the suggestion, however, that because he committed one crime it is no evidence that he committed the crime of which he now stands charged." To which ruling the defendant's counsel excepted. The district attorney then proceeded as follows: "He assumed another man's name. He obtained money under false pretenses," and told how he came to admit the crime before stated. The district attorney afterwards repeated the remark that "the defendant knocked a hole in a man's head," which was also excepted to. The learned judge before whom the case was tried instructed the jury, in reference to these remarks of the district attorney, as follows: "You will not regard any statement of counsel that the defendant committed a crime in Germany, or that he was a fugitive from justice, or that he came here under an assumed name, all of which things are not in the case." On denying the motion for a new trial in the case, the learned judge remarked as follows: "The district attorney stated in his opening that the defendant had been guilty of some crime

in Germany, etc. Whether that be such an error as will reverse the judgment I am not certain. That it was error permitting the district attorney to make the statement, I haven't any doubt; but that it was cured I am of the impression. I am disposed to let the supreme court pass upon the question."

The language of the learned judge in his instructions to the jury and in these last remarks is here quoted to his credit, as well illustrating his characteristic candor, frankness, fairness, and sense of justice. And it was thought proper that it should be reproduced, to accompany and explain his first ruling upon the remarks of the district attorney in opening the case to the jury. The facts stated by the district attorney would not have been competent or proper evidence if placed before the jury under the sanctions of an oath, and they were much more improper when pressed upon the attention of the jury by the authority of the prosecuting officer of the state, and produced a greater and more lasting effect. These remarks of the district attorney, so grossly improper, unprofessional, and unjust, and so repeated and asseverated to the jury, when their minds were entirely free from bias, prejudice, or partiality, when they had no knowledge or opinion of the defendant or of the merits or demerits of his prosecution, and before they had heard any evidence, and when they were bound to presume him innocent, must have produced an ineffaceable and permanent impression. After hearing the recital of these crimes charged to have been committed by him, and that he was yet a fugitive from justice, their suspicions were aroused, and in their minds the *probability* of his guilt in the present case was already established, and they were ready and in fit mood to construe every fact and circumstance in the evidence that was afterwards produced, and resolve all doubts, against the prisoner at the bar. Then, after all the evidence is given and their opinions were

forming or already formed,— whether from the evidence
alone, or from the evidence corroborated and strengthened
by these terrible charges of the district attorney, they could
not tell,— and after the court had said in their presence,
directly in connection with those charges of previous crimes,
"I suppose the previous history of the defendant may be
given," what avail was it for the court to instruct the jury
that they need not regard any statement of the district at-
torney that the defendant committed a crime in Germany,
etc.? They had already regarded it. It was fastened upon
their minds, and was mingled with the testimony past the
possibility of separation, and it had been weighed with the
testimony in those nicely balanced scales which are made so
easily to preponderate. The statements had been deliber-
ately made, and they were approved by the court. It was
too late, at the end of the trial, to correct the error. Their
full effect upon the minds of the jury had been produced
in prejudicing them against the prisoner, and unfitting them
for an impartial hearing of the evidence and trial of the case.
What though they were told by the court that "the fact
that the defendant committed *one crime* was no evidence
that he committed *this*"? This language of the court came
very near sanctioning the charge made by the district at-
torney, or taking it as true. It was enough that the defend-
ant came before the jury for trial for this crime, already
guilty of several other crimes by the solemn and deliberate
statement of this high and impartial officer of the state and
of the court. It was impossible that he should have a per-
fectly fair and impartial trial after this. I never heard of
such an opening speech from a prosecuting officer before,
and I question if there ever was one so violent and repre-
hensible. Now that this case is before this court on this
alleged error, to sanction it would overrule every previous
case decided by this court in which such an error was as-
signed, and be in conflict with all of the decisions of other

courts upon this question. The remarks of counsel to the jury upon matters outside of the evidence in *Bremmer v. G. B., S. P. & N. R. Co.* 61 Wis. 114, which were deemed in that civil case sufficient error to reverse the judgment, were a thousand times more harmless. In *Brown v. Swineford,* 44 Wis. 282, the remarks were far less objectionable, and they were held of sufficient consequence to reverse an otherwise meritorious judgment. Chief Justice RYAN said in that case: "It is sufficient that the extra-professional statements of counsel may gravely prejudice the jury and affect the verdict;" citing *Tucker v. Henniker,* 41 N. H. 317; *State v. Smith,* 75 N. C. 306; *Ferguson v. State,* 49 Ind. 33. A great many similar cases are cited in the brief of the appellant's counsel in that case, and in the brief of the learned counsel of the plaintiff in error in this case, to which reference may be had. For these very objectionable remarks of the district attorney, so approved by the court, we are compelled to reverse the judgment of conviction in this case and order a new trial.

After the opening of the case, and when the first witness was called for the state and did not respond, the district attorney said, in the presence of the jury, "Perhaps somebody has got hold of him;" intimating that some one on behalf of the defendant had tampered with the witness or spirited him away. The court so understood the remark, and reproved the district attorney for making it, saying "that it did not follow that there is any tampering with the witness because he was absent." The district attorney thereupon said, "I will prove it before I get through." He did not thereafter even offer to prove this charge. He evidently made this unfounded charge to prejudice the defendant's case in the minds of the jury. This may not of itself be such an error as to warrant a reversal of the judgment, but it was grossly improper, and very unfair towards the prisoner, and was wickedly consistent with his preceding un-

warrantable and reprehensible assault upon the defendant's previous character.

The judgment must be reversed for the above error, and it may be unnecessary to consider other errors alleged in the record or to determine whether they are such. Yet, as the case must again be tried *de novo*, it would be well to avoid at least the error assigned in relation to the *view* of the premises or locality where the murder was supposed to have 'been committed, the manner in which it was taken by the jury, and the legal purpose and effect thereof as stated in the instructions.

The counsel for the state and for the prisoner were both allowed to be present with the jury upon this view, while the prisoner was not. The respective counsel in their affidavits recriminate upon each other as to their conduct in attempting to direct the observation and influence the judgment of the jury in respect to the particulars of the place and the local scenes of the various and successive acts of the drama while they were making their view. The court, in allowing them to accompany the jury, cautioned them, very properly, not to discuss in their presence the localities, but told them, and we think improperly, that they might call their attention to the facts, as "Here is where they found him;" "Here is a barrel;" "Here is where Gusta was." The great temptation to improper communication with the jury in such an outdoor and informal view, and unrestrained discussion with them of the relative bearings of objects and places upon the facts in issue, has caused us to question the propriety of leading the respective counsel into it. There appears to be no grave necessity that they should attend the jury upon such an excursion, and it would seem that the jury ought to depend upon their own knowledge of the case, derived from the evidence, and upon their own undirected and uninfluenced observation. There is, on such a view, at least a tendency for them to disband and wander

about in detachments in search of new discoveries, affording excellent opportunities for the polite and unsuspected attentions of the counsel. It might be as well for the jury to be unaccompanied except by the proper officer.

The jury were instructed upon the uses of their view as follows: "What they saw legally becomes a part of the evidence in the case. That was the purpose for which the jury were sent to view the premises." This would appear to be in conflict with the decision of this court in the recent case of *Seefeld v. C., M. & St. P. R. Co.* 67 Wis. 96. It is said in the opinion in that particular case that "the knowledge acquired by the view was to be used only in determining the weight of conflicting testimony of value." The object and office of the view are thus stated in *Washburn v. Mil. & L. W. R. Co.* 59 Wis. 364: "To enable the jurors better to understand the evidence on the trial." This was the purpose at common law. Jac. Law Dict. tit. "View." It is not to obtain *original* testimony in addition to or contradiction of the evidence given in court, or independent of it, but to obtain a more perfect knowledge of the evidence, and to enable the jury to better understand it, and to consider it in the light and by the aid of the sensible objects and localities disclosed by the view. It is said in *Munkwitz v. C., M. & St. P. R. Co.* 64 Wis. 403: "The view of the premises by the jury is for the purpose of assisting them in weighing and applying the evidence." That case was peculiarly apt as furnishing the foundation of the correct rule. There are other cases in this court and in other courts, and some of them are cited by counsel in his brief, which lay down this as the correct rule. It will be perceived that the court in this case extended the rule so far as to make the knowledge of the jury derived from the view independent evidence of facts material to the issue, without any reference to that which was given in court. We may say further, in respect to the view in this

case, on the trial of the defendant for a capital offense, that we think it very questionable whether it should have been taken in his absence, unless he expressly waived his right to be present.

We regret that the error of allowing the district attorney to make such an opening statement to the jury is so marked, important, and material that the judgment has to be reversed and a new trial ordered; but, as it is, it cannot be avoided.

*By the Court.*— The judgment of the circuit court is reversed, and the cause is remanded for a new trial. The warden of the state prison will surrender the plaintiff in error to the sheriff of Dodge county, who will hold him in custody until he shall be discharged or his custody changed by due course of law.

See note to this case in 32 N. W. Rep. 849.— REP.