CULLEN, Plaintiff in error, v. STATE, Defendant in error.
WARD, Plaintiff in error, v. SAME, Defendant in error.
HOWARD, Plaintiff in error, v. SAME, Defendant in error.

*February 4—March 2, 1965.*

654

For the plaintiffs in error there was a brief by *Campbell, Brennan, Steil & Ryan* and *George K. Steil,* attorneys, and *Thomas J. Basting* of counsel, all of Janesville, and oral argument by *George K. Steil.*

For the defendant in error the cause was argued by *Betty R. Brown,* assistant attorney general, with whom on the brief were *George Thompson,* attorney general, and *William A. Platz,* assistant attorney general.

GORDON, J.   All three of the accused men were charged as principals, although Mr. Howard and Mr. Ward appear to be the ones who physically entered The Beloit Thrift Center. It is not claimed that Mr. Cullen actually entered the building, but he allegedly assisted in the planning and was in the vehicle which was used in connection with the burglary.

Several of the contentions advanced upon this writ of error relate only to Mr. Cullen; others concern all three defendants. All defendants were represented by counsel and were convicted after pleas of not guilty. We will consider the various contentions raised.

### *Was Consolidation Proper?*

Through his separate counsel, Mr. Cullen objected to the cases of the three defendants being consolidated for trial. No objection was made by the other two defendants. After a hearing, the trial court ordered consolidation. The charges against the three defendants were identical and arose out of the same events. The same witnesses were to be called in the case of each man. No apparent antagonism was shown in connection with the defenses of the three accused parties.

The trial court did not abuse its discretion in ordering consolidation. *State v. Nutley* (1964), 24 Wis. (2d) 527, 129 N. W. (2d) 155; *Mandella v. State* (1947), 251 Wis. 502, 29 N. W. (2d) 723; *Kluck v. State* (1937), 223 Wis. 381, 269 N. W. 683; *Pollack v. State* (1934), 215 Wis. 200, 253 N. W. 560, 254 N. W. 471. Cf. *Flamme v. State* (1920), 171 Wis. 501, 177 N. W. 596.

Specifically, it is now urged on behalf of Mr. Cullen that there was adverse testimony offered by one of the witnesses, Barbara Babler, which it is claimed was hearsay with reference to Mr. Cullen because it related to statements made out of his presence. Mr. Cullen's counsel at the trial made no objection to the receipt of this testimony, nor did he make any request to have the trial court limit the applicability of the evidence by a special instruction to the jury. No request for a severance was made at the trial after this testimony was admitted.

At the time it ordered the consolidation, the trial court may well have anticipated the possibility that there would be some minor incompatibility in the evidence and, nevertheless, properly ordered consolidation. In the *Nutley Case,* at page 543, we observed that there might be prejudice to one of several defendants in a consolidated case when there would be presented at the trial "an entire line of evidence relevant to the liability of only one defendant." The evidence in the case at bar which is claimed to have been improper is surely less than the "entire line of evidence" which would warrant a finding of prejudicial error.

## The Sanity Determination.

On the day of trial, Mr. Cullen's counsel moved for an examination of his client's sanity to determine if he was competent to stand trial. The court was advised of certain unusual conduct on the part of Mr. Cullen while he was in jail awaiting trial and thereupon ordered an examination by

a medical doctor. Subsequently, the court received the doctor's testimony and concluded that Mr. Cullen was sane and able to proceed to trial.

It is now urged that the court should have appointed a psychiatrist instead of a general practitioner. It is contended that the doctor's medical examination lasted only twenty minutes and that his testimony showed that he did not delve into the correct tests and criteria for determining sanity.

Counsel has presented no authority to support his claim that the physician appointed must be a psychiatrist. We do not regard sec. 51.01 (2), Stats., as controlling in the instant case. In our opinion, the appointment of a physician engaged in general practice was lawful under sec. 957.13 (1), which authorizes the trial court to conduct a summary inquiry. We believe that, from a reading of the aforesaid section of the statutes and the alternative section, sec. 957.27 (3), it is apparent that the legislature intended to impose broad discretion upon the trial judge in determining mental capacity to stand trial. In *Crocker v. State* (1884), 60 Wis. 553, 557, 19 N. W. 435, it was held that "the method of making inquisition is left to the discretion of the court."

There is a presumption of sanity in Wisconsin which must be overcome by credible evidence. *State v. Schweider* (1959), 5 Wis. (2d) 627, 636, 94 N. W. (2d) 154; *State v. Vinson* (1955), 269 Wis. 305, 68 N. W. (2d) 712, 70 N. W. (2d) 1. In the instant case, we find no abuse of discretion on the part of the trial court in its conclusions or in the manner it reached them. The evidence does not establish that the presumption of sanity was overcome or that it was necessary to hospitalize Mr. Cullen for further observation. Neither the length of the examination nor the testimony of the medical doctor warranted a conclusion that the trial court erred. *Wilson v. State* (1956), 273 Wis. 522, 529, 78 N. W. (2d) 917.

*Counsel's Request to Withdraw.*

On the day of the trial, Mr. Cullen's attorney asked to withdraw. He informed the court that Mr. Cullen was uncooperative and had complained that he did not trust his lawyer, who had been appointed by the court. In view of the time of the request and also in view of Mr. Cullen's peculiar demeanor (which prompted the sanity inquiry discussed above), we believe that the trial court did not abuse its discretion in denying counsel's request to withdraw. See *Browne v. State* (1964), 24 Wis. (2d) 491, 508, 129 N. W. (2d) 175, 131 N. W. (2d) 169.

The moment of trial had arrived; the witnesses were at hand. The trial court had a right to weigh the impact on others in determining whether counsel should be permitted to withdraw. *People v. Wolff* (1960), 19 Ill. (2d) 318, 167 N. E. (2d) 197, certiorari denied, 364 U. S. 874, 81 Sup. Ct. 119, 5 L. Ed. (2d) 96.

The court may properly have had misgivings as to whether Mr. Cullen's hostility to his attorney constituted entirely competent and intelligent conduct or waiver in light of his unusual behavior and the question as to his sanity. The problem of waiver on the part of the mentally incompetent defendant has been discussed by Professor David Fellman in his scholarly study of The Right to Counsel Under State Law, 1955 Wisconsin Law Review, 281, 302.

It should further be noted that after the denial of the request to withdraw, Mr. Cullen's attorney did, in fact, continue to represent him during the trial, and no claim is being advanced that such representation was incompetent. The charge is made, however, that the client's lack of confidence in his attorney impeded the needed communication between attorney and client. Under all the circumstances, we find that there was no abuse of discretion.

■

*Alleged Improper Evidence.*

Was error committed in allowing lay witnesses to testify that certain markings were bloodstains? No objection to such testimony was made during the trial. Even over objection it is proper for a court to receive into evidence the opinion of a lay witness that he observed bloodstains. *People v. Preston* (1930), 341 Ill. 407, 173 N. E. 383, 77 A. L. R. 631; *Johnson v. State* (1911), 88 Neb. 565, 130 N. W. 282.

By way of analogy, it has been held that the average citizen can properly express an opinion as to whether another person is inebriated. *Milwaukee v. Antczak* (1964), 24 Wis. (2d) 480, 484, 129 N. W. (2d) 125; *Odya v. Quade* (1958), 4 Wis. (2d) 63, 74, 90 N. W. (2d) 96; *Kuroske v. Aetna Life Ins. Co.* (1940), 234 Wis. 394, 404, 291 N. W. 384. So, too, it is permissible for the ordinary person of average intelligence to express a conclusion as to whether he observed bloodstains. Few individuals arrive at adulthood without having had frequent occasions to see both bloodstains and persons under the influence of alcohol; opinions thereon need not be the exclusive domain of purported experts. If, through cross-examination, it becomes apparent that the witness has not, in fact, had sufficient familiarity with such matters during his lifetime, it would be proper for the court to order the testimony stricken. We cannot, however, say that bloodstains are so within an area of esoterica that their presence can be described only by experts.

Error is also charged because the court permitted into evidence a cardboard box and traveling kit which were similar to items allegedly involved in the burglary. The court made it clear that the exhibits were received for the edification of the jury and were not the actual items involved in the crime. We consider that it was entirely proper to submit comparable items to the jury for illustrative purposes.

## The Jury Matron.

The jury matron in this case was a Mrs. Sapp. She was the wife of one of the prosecution witnesses. Her husband also had been one of the investigating officers. Although no objection was made on this score until motions for new trials were presented, we consider that this constituted an error at the trial, and we must determine whether there was a prejudicial effect.

There are several decisions in this state which make it clear that the practice of permitting a prosecution witness to act as jury bailiff is improper even in the absence of proof of actual or attempted influence upon the jury. *State v. Cotter* (1952), 262 Wis. 168, 54 N. W. (2d) 43; *Surma v. State* (1952), 260 Wis. 510, 51 N. W. (2d) 47. See also *La Valley v. State* (1925), 188 Wis. 68, 205 N. W. 412. In the *Cotter Case,* the conviction was reversed, with the court stating the following, at page 173:

"Even though no prejudice was shown and even though the instructions by the trial judge would tend to eliminate prejudice, if any in fact existed, a trial must be free not only from prejudice but from the appearance thereof, and the rule must be adhered to in this case."

Other Wisconsin cases which have considered the problem of the stigma which attaches to the administration of justice when there is an appearance of impropriety in connection with the jury are *O'Connor v. Brahmstead* (1961), 13 Wis. (2d) 432, 435, 436, 108 N. W. (2d) 920, *Rasmussen v. Miller* (1955), 268 Wis. 436, 440, 68 N. W. (2d) 16, and *State v. Sawyer* (1953), 263 Wis. 218, 226, 56 N. W. (2d) 811.

To Lord Coke is attributed the following comment: "It is the worst oppression, that is done by colour of justice."

The United States supreme court recently explored this problem and reached the same conclusion which this court had adopted in the *Cotter Case* and in the *Surma Case.*

Said the United States supreme court in *Turner v. Louisiana,* 379 U. S. 466, 85 Sup. Ct. 546, 13 L. Ed. 424.

"Mr. Justice HOLMES stated no more than a truism, when he observed that 'Any judge who has sat with juries knows that, in spite of forms they are extremely likely to be impregnated by the environing atmosphere.' *Frank v. Mangum,* 237 U. S. 309, at 349 . . . (dissenting opinion)."

The main distinction between the case at bar and the *Turner Case* is, of course, that Mrs. Sapp was not herself a witness but was, instead, merely the wife of one. There is no showing that any actual impropriety with the jurors took place; more importantly, the record does not reflect that there was an awareness by the jury of Mrs. Sapp's identity. In a case in which the witness himself serves as the bailiff, his identity is necessarily known to the jurors, and all the subtle evils inherent in that situation may ripen so as to taint the verdict. In the instant case, the trial judge ruled that there was nothing "to indicate to the jury that Mrs. Sapp was the wife of one of the prosecution's witnesses," and we find no contradiction of this conclusion in the record.

Another distinction which also tends to lessen the impact of this error is the relatively short period during which the jury may have been subjected to Mrs. Sapp's influence. In the instant case, the period was about three hours, which is a remarkable contrast to the period of three days in the *Turner Case.* The significance of this time factor is suggested by the following language of the United States supreme court in the *Turner Case:*

"We deal here not with a brief encounter, but with a continuous and intimate association throughout a three-day trial—an association which gave these witnesses an opportunity . . . to renew old friendships and make new acquaintances among the members of the jury."

A further distinction between the instant case and the *Turner Case* is that in the latter case the testimony that had been given by the two prosecution witnesses was crucial to

conviction. This cannot be said with reference to Mr. Sapp's testimony. He testified concerning his delivering two of the arrested men from Springfield, Illinois, and he also described how certain evidence was turned over to him.

We conclude that the trial court erred in permitting a witness' wife to serve as jury matron, but, upon this record, we find that there was no prejudice.

### Presence of Accused at View.

At the request of one of the defendants, the jury was taken to the scene of the alleged crime for a view thereof. The record does not indicate whether the defendants were present at such time. The defendants now contend that there was a violation of their right under sec. 957.07, Stats., to be "personally present" during the trial of a felony. *State v. Sasse* (1888), 72 Wis. 3, 38 N. W. 343; *Sasse v. State* (1887), 68 Wis. 530, 32 N. W. 849.

Assuming, without deciding, that an accused must be present at the jury's view of the scene of an alleged crime, we conclude that the record simply does not show that any flaw occurred in the case at bar. The record is silent as to whether the three accused were in attendance at the view. No objection was made, nor was the issue raised until the motions for new trials. We find no reason to assume that the record's silence reflects irregularity; there is no requirement that the record must affirmatively show an accused's attendance at a view of the scene of the crime.

Because of our conclusion as to the state of the record, there is no need for our considering the question whether the accused can or did waive their right to be present.

### Claimed Improper Sentencing.

Each of the defendants was convicted of both burglary and theft. They were given consecutive sentences as to each of said crimes. It is urged that the net result to the de-

fendants has been unjust because, in other counties of this state, prosecutors might process only the burglary charge and not the theft charge.

No authority is cited by the defendants for their contention, and no case law has been brought to our attention which proscribes the practice employed in the instant case. On the contrary, in *State v. Johnson* (1960), 11 Wis. (2d) 130, 104 N. W. (2d) 379, the accused was charged, convicted, and sentenced for both burglary and theft, and this court affirmed without discussing the issue now under consideration.

We have held that it is not proper to convict for both an underlying felony and a felony murder (third-degree murder). *Ronzani v. State* (1964), 24 Wis. (2d) 512, 519, 129 N. W. (2d) 143; *State v. Carlson* (1958), 5 Wis. (2d) 595, 93 N. W. (2d) 354. Such conclusion, however, is derived from the fact that the penalty under the express language of sec. 940.03, Stats., entitled "Third-degree murder," is determined by increasing the maximum penalty specified for the underlying felony. Thus, the *Ronzani* and *Carlson* concept as to felony murder is not applicable to a burglary-theft situation.

We conclude that it is legal for an accused to be prosecuted on both burglary and theft charges; this is true even though it may be that the contemplated theft supplies the felonious intent for the burglary. We do not regard sec. 939.66, Stats., to be applicable because the theft is not an "included crime" of the burglary.

### Conclusion.

We find no error prejudicial to these defendants and conclude that their convictions and sentences must be upheld.

*By the Court.*—Judgments affirmed.