STATE of Wisconsin, Plaintiff-Respondent,†

v.

Jerald WILLIQUETTE, Defendant-Appellant.††

Court of Appeals

*No. 92–2910–CR. Submitted on briefs July 9, 1993.—Decided December 2, 1993.*

(Also reported in 510 N.W.2d 708.)

†Petition to review granted.
††Petition to cross-review denied.

595

For the defendant-appellant the cause was submitted on the briefs of *James M. Bablitch* of Stevens Point.

For the plaintiff-respondent the cause was submitted on the brief of *James E. Doyle*, attorney general, and *Daniel J. O'Brien*, assistant attorney general.

Before Gartzke, P.J., Dykman and Sundby, JJ.

DYKMAN, J.   Jerald Williquette appeals from a judgment convicting him of one count of sexual assault of a child, contrary to sec. 948.02(1), Stats. He argues that the trial court erred by permitting the state to impeach the jury's verdict. He also asserts that he should be given a new trial because of trial error and ineffective assistance of counsel, and because the real controversy was not fully tried. We conclude that the trial court erred by permitting an attack on the jury's verdict, but that no other errors occurred. We therefore

596

reverse with instructions to vacate Williquette's judgment of conviction, reinstate the verdict originally found by the jury, sentence Williquette on that verdict, and enter a new judgment of conviction.

## VERDICT IMPEACHMENT

Williquette was charged with two counts of sexual assault of a child, one alleging an assault on Kathy L., and the second alleging an assault on Amanda K. The jury was given four verdict forms, and it returned the two forms which found Williquette not guilty of assaulting Kathy L., and guilty of assaulting Amanda K. A poll answered individually by each member of the jury confirmed these verdicts. Five days after the jury returned its verdicts, the trial court asked one juror what his verdict was. The trial court eventually questioned all of the jurors.[1] Ten replied that they intended to find Williquette guilty of assaulting Kathy L., and not guilty of assaulting Amanda K. One juror said that the jury had intended to convict Williquette of both counts, and one juror could not remember what was done, but thought that the verdicts as returned were correct.

The trial court asked the parties to research the issue, and concluded that it could enter a judgment convicting Williquette of assaulting Kathy L. It did so, and Williquette appeals.

The parties agree on the history of challenges to jury verdicts. In *Wolfgram v. Town of Schoepke*, 123 Wis. 19, 100 N.W. 1054 (1904), the jury foreman placed

---

[1] The trial court's questioning of the jurors resulted from a conversation between the jury foreman and the social worker on the case. The foreman indicated that the jury had intended to reach verdicts which were the opposite of what had been marked on the verdict forms.

the word "yes" after the verdict question of whether the plaintiff was negligent. Affidavits from all jurors showed that the jury had decided that the correct answer was "no," and that the answer in the verdict was a mistake. The court recognized that jurors may not impeach their verdicts. It said, however:

> But is it an attempt to impeach their own verdict? That depends on the sense in which that word is used. Is the written paper filed, or the agreement which the jury reach[ed], the verdict? We think the latter is what is intended when we say the jurors cannot impeach it. The former, like most records or writings, is but the expression or evidence of some mental conception. Hence it may well be said that a showing that such writing is not correct is not impeachment of the verdict itself.

*Wolfgram,* 123 Wis. at 25-26, 100 N.W. at 1056.

But in *Ford Motor Credit Co. v. Amodt*, 29 Wis. 2d 441, 449, 139 N.W.2d 6, 10 (1966), the court said:

> We now expressly overrule *Wolfgram v. Schoepke* and disavow the exception to the general rule which was made in that case. Once the jury has returned its verdict into court and has been discharged, its members may not be permitted to initiate a challenge to such verdict, whether it be based on their own misconduct or a claimed erroneous recordation.

The supreme court adopted secs. 906.01 and 906.06(2), Stats., which took effect on January 1, 1974. Section 906.01 states:

> Every person is competent to be a witness except as provided by ss. 885.16 and 885.17 or as otherwise provided in these rules.

Section 906.06(2), Stats., provides:

Upon an inquiry into the validity of a verdict or indictment, a juror may not testify as to any matter or statement occurring during the course of the jury's deliberations or to the effect of anything upon the juror's or any other juror's mind or emotions as influencing the juror to assent to or to dissent from the verdict or indictment or concerning the juror's mental processes in connection therewith, except that a juror may testify on the question whether extraneous prejudicial information was improperly brought to the jury's attention or whether any outside influence was improperly brought to bear upon any juror. Nor may the juror's affidavit or evidence of any statement by the juror concerning a matter about which the juror would be precluded from testifying be received.

The state relies upon the committee note to sec. 906.06(2), Stats., which states in relevant part:

Adoption of ss. 906.01 and 906.06(2) . . . would withdraw the limits upon verdict attack in . . . *Ford Motor Credit Co. v. Amodt*, 29 Wis. 2d 441, 139 N.W.2d 6 (1966), which are: " . . . (1) that substantial personal awareness of the alleged impropriety is within the direct and independent knowledge of one who did not serve as a member of the jury, (2) that such knowledge was not derived by such person from a juror after the jury's discharge, and (3) that the challenge to the integrity of the verdict originated from such person rather than from a juror."

Judicial Council Committee's Note, 1974, sec. 906.06(2), Stats., 59 Wis. 2d at R166 (citations omitted).

The state's reliance on this note is misplaced for several reasons. First, the commentary of the Wisconsin Judicial Council Committee was printed for

informational purposes but was not adopted when the Wisconsin Rules of Evidence were adopted. 59 Wis. 2d at R2. Second, the committee comment was referring to a part of *Ford Motor Credit Co.* which permitted juror interrogation, subject to the three conditions we have quoted from the committee's note. Those three conditions limited the exception the court noted in *Ford Motor Credit Co.* We agree that those three conditions were withdrawn by the adoption of sec. 906.06(2), Stats. But the effect of withdrawing those limits is the opposite of what the state contends. By removing the conditions, the exception has become less limited. Therefore, we are left with *Ford Motor Credit Co.*'s statement that:

> We recognize, however, that in some situations (such as [*State v.*] *Sawyer* [, 263 Wis. 218, 56 N.W.2d 811 (1953), *cert. dismissed*, 346 U.S. 801 (1953),] and *Cullen* [*v. State*, 26 Wis. 2d 652, 133 N.W.2d 284 (1965), *cert. denied*, 382 U.S. 863 (1965)]) jurors may properly be subject to interrogation by the court to determine if an irregularity occurred. . . ."

29 Wis. 2d at 450, 139 N.W.2d at 11.

*Sawyer* and *Cullen* involved extraneous matter coming before a jury. The court permitted inquiry into the facts underlying the exposure of the jury to the extraneous matter. *Sawyer*, 263 Wis. at 225-26, 229, 56 N.W.2d at 814, 816; *Cullen*, 26 Wis. 2d at 660-62, 133 N.W.2d at 288-89. More recently, in *After Hour Welding, Inc. v. Laneil Management Co.*, 108 Wis. 2d 734, 739-40, 324 N.W.2d 686, 690 (1982), the court permitted inquiry into an allegation that several jurors had discussed an officer of the defendant and had called him a "cheap Jew." And, in *State v. Wachsmuth*, 166 Wis. 2d 1014, 1022, 480 N.W.2d 842, 846 (Ct. App.

1992), we concluded that the jury had received prejudicial, extraneous information. We reversed the defendant's conviction.

We conclude that entering the jury's decision on the wrong verdict form is not prejudicial, extraneous information brought to a jury's attention. We further conclude that sec. 906.01, Stats., pertains to competency of witnesses, not to a rule prohibiting impeachment of juries' verdicts. And we conclude that the adoption of sec. 906.06(2), Stats., did not overrule *Ford Motor Credit Co.* insofar as that case prohibits the impeachment of a written verdict which does not reflect the oral decision reached by the jury.

We recognize that this may lead to injustice in some cases, but the supreme court considered that possibility and other policy factors in *Ford Motor Credit Co.* when it overruled *Wolfgram*. If the state seeks a second reversal of those policy considerations and a return to *Wolfgram*, it should seek that reversal from the supreme court. *See State v. Lossman*, 118 Wis. 2d 526, 533, 348 N.W.2d 159, 163 (1984).

The result of our decision is that the trial court must vacate the judgment convicting Williquette of the sexual assault of Kathy L., and enter a judgment convicting him of the sexual assault of Amanda K. Though both charges were Class B felonies, sentencing factors and collateral consequences could be different. Therefore, Williquette must be resentenced.

## MISUSE OF VIDEOTAPE EVIDENCE

As part of the state's investigation of this case, a social worker interviewed Kathy L., Amanda K. and another girl. The interview was videotaped. The third girl denied that Williquette had assaulted her, but

believed that he had assaulted her sister, Kathy L. Kathy L. told the social worker that Williquette had put two fingers in her vagina, that he was drunk when he did so, and that Williquette drank "a very, very lot." She also told the social worker that her mother swore in her sleep because of the assault on Kathy. The social worker said that she did not blame Kathy's mother for being angry with Williquette.

Amanda K. also told the social worker about Williquette's excessive use of alcohol, and that she had discovered that he used marijuana. The social worker commented that it seemed to her that Williquette had a couple of problems, and that he did a lot of drinking. Amanda K. said that she hated Williquette's guts, and the social worker said that what he did to Amanda was not very nice.

The state produced a variety of witnesses at trial, including Kathy L. and Amanda K. At the end of Williquette's cross-examination of the final state's witness, his attorney said: "Okay. We'll take that [the state's witness's refusal to answer a question] up later then. I have no other questions at this time. I'd ask that we play the video." The state made no objection to Williquette's request. The court inquired as to who was pictured on the video, and whether it should be transcribed by the court reporter. Williquette's attorney said: "[We'll] stipulate that the video can simply be received for, you know, the jury to listen to. There is no need for a transcript." The state did not object to the use of the videotape. After the videotape began playing, the trial court ordered that it be stopped. The parties had an off-the-record discussion, and the videotape was then shown to the jury.

Section 908.08, Stats., governs videotaped statements of children sought to be used at trial. Although a lengthy statute, its purpose is to permit the evidentiary use of videotapes of children if a variety of safeguards are followed. Instead of introducing the videotape himself, had Williquette objected pursuant to sec. 908.08 to the state's attempted use of the videotape, the tape probably would not have been shown to the jury.

Williquette asserts that the trial court erred by failing to *sua sponte* exclude the videotape, or parts of it. We disagree. The notion that a trial court is required to continually monitor a defendant's trial strategy and witness examination places too great a burden on the trial court, and risks both unwanted interference in a defendant's case and an inference that the judge is representing the defendant. In *McClelland v. State*, 84 Wis. 2d 145, 267 N.W.2d 843 (1978), the court said: " 'This court has not looked with favor upon claims of prejudicial error based upon the trial court's failure to act when no action was requested by counsel.' " *Id.* at 158, 267 N.W.2d at 849 (quoting *Whitty v. State*, 34 Wis. 2d 278, 290, 149 N.W.2d 557, 562 (1967), *cert. denied*, 390 U.S. 959 (1968)). We conclude that when a defendant asks that a piece of evidence be admitted, and the state does not object, the trial court does not err by admitting that evidence.

But Williquette asserts that the introduction of the videotape was "plain error," and that sec. 901.03(4), Stats., permits the trial court and this court to take notice of plain errors affecting the substantial rights of a defendant, even if the errors were not brought to the attention of the judge. However, sec. 901.03(4) requires an initial determination that error occurred. We have

603

already held that the trial court did not err by permitting the jury to view the videotape at Williquette's request. Its failure to *sua sponte* prohibit the showing Williquette requested, or to limit the portions the jury could see, is not plain error.

INEFFECTIVE ASSISTANCE OF COUNSEL

■

We noted the two-part analysis of ineffective assistance of counsel claims in *State v. Marty*, 137 Wis. 2d 352, 356, 404 N.W.2d 120, 122 (Ct. App. 1987). Both the "performance" and "prejudice" components of such a claim are mixed questions of law and fact. *Id.* If the facts have been established, whether counsel's representation was deficient and, if it was, whether it was prejudicial are questions of law, which we decide *de novo*. *Id.* at 356-57, 404 N.W.2d at 122. There are no standards by which to measure counsel's performance. *Id.* at 357, 404 N.W.2d at 122. But in *State v. Johnson*, 133 Wis. 2d 207, 217, 395 N.W.2d 176, 181 (1986), the court quoted *Strickland v. Washington*, 466 U.S. 668, 690 (1984), when it noted that:

> [A court] "must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct. A convicted defendant making a claim of ineffective assistance must identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment. The court must then determine whether, in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance. In making that determination, the court should keep in mind that counsel's function, as elaborated in prevailing pro-

fessional norms, is to make the adversarial testing process work in the particular case. At the same time, the court should recognize that counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment."

We note that the required test is that counsel be "adequate." This does not mean the best counsel that might have tried the case, nor the best defense that might have been presented. "Counsel need not be perfect, indeed not even very good, to be constitutionally adequate." *Dean v. Young*, 777 F.2d 1239, 1245 (7th Cir. 1985), *cert. denied*, 475 U.S. 1142 (1986).

Williquette identifies five instances in which he believes his counsel was inadequate. We will discuss each assertion.

His first is: "There is simply no excuse for not limiting the use of the video tape. . . ." Williquette claims that trial counsel acknowledged this at the postconviction hearing. The court concluded that defense counsel used the tape to bring out inconsistencies in the two complaining witnesses' statements, and to show the influence of the social worker. We agree with this conclusion. But Williquette argues that competent counsel would have limited the use of the tape by excising the parts which showed that he was a drunk and a drug user, and a part showing the effect of the supposed sexual assault on the child's mother. He admits that evidence of his drinking could not have been excluded altogether.

The problem with Williquette's assertion is that he assumes that the trial court would have excised whatever he wanted excised from the tape. The trial

court's response is not the certainty Williquette assumes. We review an evidentiary ruling for an erroneous exercise of discretion. *Lievrouw v. Roth*, 157 Wis. 2d 332, 348, 459 N.W.2d 850, 855 (Ct. App. 1990). Williquette does not argue or give authority for the proposition that the trial court would have erroneously exercised its discretion by adopting an "all or nothing" view as to the admissibility of the videotape. He does not cite authority holding that a jury's knowledge that a defendant used marijuana is prejudicial, depriving him of a trial whose result is reliable, nor authority holding that knowledge of a mother's negative response to her daughter's assertion of sexual assault would cause a jury to convict a defendant.

The trial court noted that the jury acquitted Williquette of one count of sexual assault. We agree with Williquette that this is not necessarily evidence of trial counsel's brilliance. But it does show that the jury was willing to acquit Williquette of a charge of sexual assault, despite the knowledge of the facts which he asserts would have been excised from the videotape by competent counsel.

Williquette has not convinced us that the trial court would have excised parts of the videotape, had his counsel asked it to do so. Nor are we convinced that Williquette was prejudiced when the jury heard the parts of the videotape to which he objects. Therefore, we conclude that Williquette has not overcome the presumption that his trial counsel was effective, despite counsel's failure to request excision of the complained-of parts of the videotape.

Next, Williquette asserts that his attorney participated in evidentiary hearings in his absence. He refers

to hearings during which some of the jurors were questioned as to their verdict. Though we cannot see how this could have been prejudicial to Williquette, we have already determined that evidence received at those hearings could not be used to change the verdict. This assertion of ineffectiveness of counsel is moot.

■■

Williquette asserts that his trial counsel made no request to limit the use of statements made by Kathy L. and Amanda K. to third parties, which were repeated by other witnesses at trial. He asserts that his trial counsel should have asked for an instruction which would have told the jury that those statements were entitled to less weight than statements made under oath and subject to cross-examination. But he cites no standard jury instruction that trial counsel should have requested, nor does he tell us what a special instruction should have contained. He does not cite authority which requires a court to give such an instruction. We decline to develop this argument for him. *State v. Gulrud*, 140 Wis. 2d 721, 730, 412 N.W.2d 139, 142-43 (Ct. App. 1987).

Next, Williquette challenges his trial counsel's failure to request Wis J I—Criminal 315, which informs the jury that a defendant in a criminal case has a constitutional right not to testify, and that a defendant's decision not to testify must not be considered or permitted to influence a verdict. Williquette's trial counsel testified that he had heard the pros and cons of using Wis J I—Criminal 315 for twelve years, and that it might be a reasonable strategy not to request that instruction; he usually does not request that instruction; and he did not recall whether he specifically considered using the instruction in this case.

The trial court concluded that Wis J I—Criminal 315, given on the second day of trial, would have high-lighted Williquette's failure to testify. In *Champlain v. State*, 53 Wis. 2d 751, 757-58, 193 N.W.2d 868, 873 (1972), the court considered the benefits and detri-ments of using the instruction, and concluded that its use was a matter of trial strategy for defense counsel to consider. If trial counsel considered the instruction and rejected its use, his performance was not ineffective. Even if failure to consider the use of the instruction would be ineffective performance, it would not be prejudicial.

Williquette's last assertion is that trial counsel had very limited communication with him. But that is only an assertion. There is no development of this argu-ment. We will not consider this issue further. *Gulrud*, 140 Wis. 2d at 730, 412 N.W.2d at 142-43.

## NEW TRIAL IN INTEREST OF JUSTICE

Williquette asks that we order a new trial pursu-ant to sec. 752.35, Stats., our power of discretionary reversal. He asserts that a new trial with an edited videotape, limited use of Amanda K.'s and Kathy L.'s statements to third parties, an instruction about his failure to testify, and more communication with his attorney would result in his acquittal. He also asserts that the controversy in this case has not been fully or fairly tried.

When the real controversy has not been fully tried, we may reverse pursuant to sec. 752.35, Stats., without first concluding that the outcome would be different on retrial. *State v. Wirts*, 176 Wis. 2d 174, 188, 500 N.W.2d

608

317, 321-22 (Ct. App. 1993), *cert. denied*, 114 S. Ct. 257 (1993). But the real controversy was whether Williquette sexually assaulted the two girls, and the jury's answer depended upon whether it believed the girls or Williquette. Williquette showed the jury that he denied the assault and cooperated with the investigation. The jury viewed and listened to the girls, and heard the differences in the stories that they told to various persons. Though improperly excluded or included evidence may be a basis for granting sec. 752.35 relief, *Vollmer v. Luety*, 156 Wis. 2d 1, 19-20, 456 N.W.2d 797, 805-06 (1990), we do not conclude that the problems Williquette identifies with the videotape, the girls' statements, the instruction on his failure to testify and his perceived limited communication with his attorney prevented the controversy from being fully tried.

We may also reverse pursuant to sec. 752.35, Stats., where there has been a miscarriage of justice, but we must first determine that there is a substantial probability of a different result on retrial. *Vollmer*, 156 Wis. 2d at 19, 456 N.W.2d at 805. While a jury might acquit Williquette on retrial, we cannot say that there is a substantial probability it would do so. We therefore decline to order a new trial on this basis.

On remand, the trial court shall vacate the judgment of conviction, reinstate the original jury verdict, sentence Williquette on that verdict, and then enter a new judgment of conviction.

*By the Court.*—Judgment and order affirmed in part; reversed in part and cause remanded with directions.